Ben HARRIS and Shirley Harris,
Plaintiffs–Appellants,

v.

KEY BANK NATIONAL ASSOCIA-
TION, d/b/a Key Bank, Key Bank of
New York and Key Bank of Central
New York, Defendant–Appellee.

Docket No. 02–7180.

United States Court of Appeals,
Second Circuit.

Nov. 6, 2002.

John M. McGovern, Norcross, GA, for
Appellants.

Mark J. Moretti, Phillips, Lytle, Hitch-
cock, Blaine & Huber LLP, Rochester,
NY, for Appellee.

Present F.I. PARKER, POOLER,
Circuit Judges, and UNDERHILL,*
District Judge.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS
HEREBY ORDERED, ADJUDGED
AND DECREED that the decision of said
district court be and it hereby is AF-
FIRMED.

---

* The Honorable Stefan R. Underhill, United
States District Court Judge for the District of Connecticut sitting by designation.

Plaintiffs-appellants Ben and Shirley Harris (the "Harrises") appeal from the January 15, 2002 order of the United States District Court for the Western District of New York (David G. Larimer, *Chief Judge*), granting the summary judgment motion of defendant-appellee Key Bank National Association, d/b/a Key Bank, Key Bank of New York, and Key Bank of Central New York ("Key Bank") and dismissing the Harrises' claims for negligence, breach of fiduciary duty, and breach of the duty of good faith. The Harrises claimed that Key Bank improperly transferred, and thus impaired, collateral the Harrises had pledged to secure a loan. The district court held that the Harrises' alleged injuries were not caused by any wrongful conduct by Key Bank, but rather by the Harrises' own inaction. The Harrises challenge this conclusion.[1] We affirm.

In June 1984, the Harrises sold an apartment building to a general partnership, the St. Paul Street Partners ("St. Paul"). As part of the purchase price, St. Paul executed a promissory note for $195,000 (the "St. Paul Street Note"), secured by a second mortgage on the property. In May 1985, the Harrises borrowed $150,000 from Key Bank, and gave the bank a demand note for $150,000 (the "Key Bank Note"), secured by an assignment of the St. Paul Street Note and second mortgage. In time, both St. Paul and the Harrises had difficulty making payments on their respective notes.

In early 1994, Key Bank sold the Key Bank Note, along with the St. Paul Street Note and second mortgage, to Lass Associates, a group of individuals closely affiliated with the St. Paul partners, for $75,000, the remaining balance on the Key Bank Note. In April 1994, Lass Associates demanded payment from the Harrises on the Key Bank Note. When the Harrises failed to do so, Lass Associates served notice that it proposed to retain the assigned collateral in full satisfaction of the Key Bank Note per U.C.C. § 9–505(2). Although the Harrises received this notice and claim that they intended to object (as was their right under U.C.C. § 9–505(2)), they did not object. A New York state court held both that Lass Associates' action was valid and therefore that the Harrises lacked standing to sue Lass Associates. The Harrises then brought this action.

The Harrises argue that Key Bank is responsible for their loss because it wrongfully transferred the Harrises' collateral to Lass Associates. However, the Harrises' argument fails to recognize the role that their own inaction played. Lass Associates' proposal to retain the collateral was made in accordance with New York law, U.C.C. § 9–505(2). Key Bank could have taken similar action when it held the Harrises' collateral. Section 9–505 allowed the Harrises to object if they were unsatisfied with Lass Associates' proposal. The undisputed evidence is that the Harrises received the notice, understood it, discussed it with their attorney, and then failed to object. Based on this evidence, there was no error in the district court's conclusion that the Harrises' alleged injuries were proximately caused by their own inaction rather than the action of Key Bank.

---

1. The district court also granted Key Bank's motion on the alternate ground that Key Bank's conduct was not, as a matter of law, a breach of any duty it owed to the Harrises. The Harrises argue that this conclusion is the product of the district court's erroneous exclusion of the affidavits of their banking industry expert, Thomas Myers. Because we conclude, as a matter of law, that the Harrises' alleged injuries were proximately caused by their own inaction, we need not reach the issue of the district court's treatment of Myers's affidavits.

Because we affirm the district court's conclusion on the issue of causation, we need not and therefore do not offer an opinion on the propriety of Key Bank's transfer of the Harrises' collateral to Lass Associates.

For the reasons stated above, the judgment of the district court is AFFIRMED.