The ONEIDA INDIAN NATION OF NEW YORK; the Oneida Indian Nation of Wisconsin; and the Oneida of the Thames, Plaintiffs,

v.

The COUNTY OF ONEIDA, et al., Defendants.

No. 70–CV–35.

United States District Court, N.D. New York.

March 24, 2003.

Cravath Swaine Law Firm (Thomas D. Barr, Esq., of counsel), New York City, Zuckerman Spaeder Law Firm (William W. Taylor, Esq., of counsel), Washington, D.C., for Oneida Indian Nation of New York.

Arlinda Locklear, Esq. (William W. Taylor, of counsel), Jefferson, MD, for Oneida Tribe of Indians of Wisconsin.

Paul Weiss Law Firm (Carey R. Ramos, Esq., of counsel), New York City, for Oneida of the Thames Council.

Nixon Peabody Law Firm (G. Robert Witmer, Jr., Esq., of counsel), Rochester, NY, Elliot Spitzer (David B. Roberts, of counsel), Albany, NY, Bond, Shoeneck & King (John J. Dee, Esq., of counsel), Syracuse, NY, for Defendants County of Oneida, New York, & County of Madison, New York.

*MEMORANDUM–DECISION*
*AND ORDER*

MCCURN, Senior District Judge.

## TABLE OF CONTENTS

Page

I. Jurisdiction...................................................85
 Background...............................................85
 Discussion ...............................................85

II. Counties' Motion for Relief from Judgment ...................86
 Background...............................................86
 Discussion ...............................................87

III. Plaintiffs' Cross–Motion for Relief from Judgment..............88
 Background...............................................88
 Discussion ...............................................89
 A. Rule 60(b)(6) Legal Standard ...................90
 B. Law of the Case Doctrine ......................91
 1. Mandate Rule ..........................91
 2. Scope of the Mandate ...................92
 3. Waiver .................................93
 a. "Reasonably Understood"..............93
 b. Opportunity and Incentive ...........94
 4. Prior Decision Rule .....................95
 a. Law of the Case Exceptions ..........96
 i. Intervening Change in Controlling Law.............96
 ii. "Clearly Erroneous" .............................98
 iii. Manifest Injustice .............................99

Conclusion.....................................................101

To understand the narrow scope of the current Fed.R.Civ.P. 60(b) motions for relief from judgment, there is no need to recite the entire long and sometimes convoluted history of this more than 30 year old action. Instead the court will discuss only the recent history that is directly relevant to the pending motions.

## I. Jurisdiction

### Background

On August 26, 2002, the court issued a memorandum-decision and order in this action. *See* Declaration of William W. Taylor, III in Support of Plaintiffs' Cross–Motion for Relief from August 29th Judgment (Oct. 17, 2002) ("Taylor Decl'n"), exh. 3 thereto. A few days later, on August 29, 2002, the court issued an "Amended Memorandum & Decision & Order[.]" *Oneida Indian Nation of*

*New York v. County of Oneida, New York,* 217 F.Supp.2d 292 (N.D.N.Y.2002) ("*Oneida VI*"). That same day the Clerk of the Court entered judgment in accordance therewith. *See* Taylor Decl'n, exh. 1 thereto. On September 27, 2002, the Oneida [1] filed with the Second Circuit a Notice of Appeal from that judgment. The Counties did the same on October 9, 2002. Following the timely filing of those Notices of Appeal, on October 15, 2002, the Counties filed a Rule 60(b)(1) motion to amend the judgment. Three days later, on October 18, 2002, the Oneida filed a Rule 60(b)(6) cross-motion to amend the judgment, but for different reasons than those which the Counties are urging.

### Discussion

The earlier filing of the Notices of Appeal would "normally 'divest[ ] the district court of

---

[1]. As this court has previously noted, the "Oneida plaintiffs" or "the Oneida" ... "refers to the three tribal plaintiffs herein: the Oneida Indian Nation of New York, the Oneida Indian Tribe of Wisconsin, and the Oneida of the Thames." *Oneida VI,* 217 F.Supp.2d at 294 n. 1. For purposes of these motions, there is no need to distinguish among these three tribal entities.

[jurisdiction] over those aspects of the case involved in the appeal[.]' " *See United States v. Camacho*, 302 F.3d 35, 36 (2d Cir.2002) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982)). The Second Circuit "allows a district court either to 'entertain and deny the rule 60(b) motion' without the circuit court's permission, or 'grant a rule 60(b) motion after an appeal is taken ... if the moving party obtains permission from the circuit court[,]' " however. *King v. First American Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 393, 154 L.Ed.2d 314 (2002) (quoting *Toliver v. County of Sullivan*, 957 F.2d 47, 49 (2d Cir.1992)) (emphasis omitted). Indeed, this court followed precisely the latter procedure in *Thompson v. County of Franklin*, 180 F.R.D. 216 (N.D.N.Y.1998) (although defendant was entitled to relief from judgment based upon newly discovered evidence, court could not grant such relief while appeal pending until Second Circuit consented and remanded, thereby returning jurisdiction to the district court). The rationale for this procedure is fairly self-evident: denying a motion to amend a judgment does not affect the appeal of that judgment by threatening to duplicate appellate proceedings. *See Boyko v. Anderson*, 185 F.3d 672, 675 (7th Cir. 1999) (Posner, C.J.). On the other hand, a district court's grant of a motion to amend a judgment on appeal has potentially far reaching implications for that appeal, and could easily interfere with ongoing appellate procedures.

Recognizing the potential jurisdictional barrier to these motions, the parties submitted a proposed order, which this court executed on November 14, 2002. In that order the court explicitly acknowledged that under the circumstances it does not have jurisdiction to amend the August 29, 2002 judgment, as the parties are requesting in their respective Rule 60(b) motions. *See* Order (Nov. 14, 2002) at 1–2, ¶ 2 (Doc. # 98). Nonetheless, the court agreed to entertain these motions and resolve them in a manner consistent with the Second Circuit's stated practice as outlined above. Thus, despite the parties filing of Notices of Appeal with the Second Circuit,

the court is now free to examine the merits of these motions.

## II. Counties' Motion for Relief from Judgment

### Background

In October 1981, United States District Court Judge Edmund Port found in favor of the Oneida "and against the ... County of Madison in the sum of $9,060 with interest at six percent per annum from January 1, 1968[.]" Affidavit of G. Robert Witmer, J. in Support of Motion for Relief from Judgment (Oct. 10, 2002) ("Witmer Aff."), exh. A thereto (Oct. 5, 1981 transcript of Judge Port's bench decision) at 174a. That sum represented the fair rental value for two years for "that portion of the subject property located in Madison County and used as highway during 1968 and 1969, ... [and] for Madison County's unlawful occupancy of the [Champlain Battleground] Park and radio tower lands." *Id.* at 172a and 173a. Judge Port further found in favor of the Oneida and "against the ... County of Oneida in ... the sum of $7634 with interest at six percent per annum from January 1, 1968." *Id.* at 174a. That sum represented the $6,534.00 rental value for the subject property located in the County and used as highways during 1968 and 1969, as well as $1,100.00 for Oneida County's unlawful occupancy of a gravel pit. *See id.* at 172a and 173a. In making the award of highway damages for both Counties, as the Second Circuit explained it, "Judge Port ... analogized the Oneidas' claim to a request for 'just compensation' for a road easement condemnation, and calculated the fair rental of 90% of the value of the property." *Oneida Indian Nation of New York v. Oneida County*, 719 F.2d 525, 542 (2d Cir.1983) ("*Oneida IV*"), *aff'd in part, rev'd in part on other grounds, Oneida County v. Oneida Indian Nation of New York*, 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985) ("*Oneida V*"). The Second Circuit held that the 10 per cent discount to the value of the highway lands was not appropriate. *Id.*

Eventually the present action came before this court on remand from the Circuit Court to resolve the issue of whether the defendant

Counties occupied the subject property in good faith, thus entitling them to a set-off for improvements to that property. Finding that the Counties did satisfy that good faith requirement, this court found that the Counties "were entitled to a set-off for improvements[.]" *See Oneida VI*, 217 F.Supp.2d at 310. Then, although the court intended to award damages in the same amounts as these adopted by Judge Port, and also taking into account the *Oneida IV* court's holding that there should be no discount for highway lands, instead it inadvertently miscalculated those damages. *See id.* and Witmer Aff., exh. B thereto at 33. Not only did the court double count the highway lands, but in determining the value of those lands, it miscalculated the same by including therein the rental value of other, non-highway lands such as the park, radio tower, and gravel pit. As a result, the Counties are now seeking to have this court amend its August 29, 2002 judgment to reflect damages consistent with Judge Port's decision and the Second Circuit's decision in *Oneida IV*.

Obviously calculation of prejudgment interest magnified this court's initial miscalculations of the damage awards. Thus, the Counties are also seeking recalculation of the prejudgment interest, but they do not offer a method by which to accomplish that. *See* Witmer Aff. at 4, ¶ 8. Presumably they simply want the court to recalculate the prejudgment interest based on the changed damage figures.

### Discussion

Pursuant to Fed.R.Civ.P. 60(b)(1), which states in relevant part that "[o]n motion and upon such terms as are just, the court may relieve a party … from a final judgment, … for … [*mistake, inadvertence*, surprise, or excusable neglect[,]]" Fed.R.Civ.P. 60(b) (emphasis added), the Counties are seeking to amend the August 29, 2002 judgment as follows.[2] First of all, Oneida County claims

that the total award as against it should be $8,360.00 representing $7,260.00 for highway lands[3] and $1,100.00 for gravel pit lands. *See* Witmer Aff. at 3, ¶ 8. Then as to Madison County, purportedly the total award against it should be $9,910.00, comprised of $8,500.00 for highway lands[4] and $1,410.00 for park and radio tower lands. *See id.*

The Counties' argument for amending the August 29, 2002 judgment to reflect the damage awards as set forth above need not detain the court for long because there is no doubt that the court inadvertently miscalculated the damages. Furthermore, the Oneida are not opposing this motion in any respect. *See* Plaintiffs' Memorandum of Law in Support of Cross–Motion for Relief from August 29th Judgment and in Response to Defendants' Motion for Relief from Judgment ("Pl.Memo.") at 2. Because this motion was brought within one year of the entry of judgment, as Rule 60(b) requires, the Oneida are not challenging the timeliness of same. Nor, understandably, are they challenging the Counties' reliance upon subsection (1) of Rule 60(b). *See O'Tell v. New York, N.H. & H.R.R.*, 236 F.2d 472, 474–75 (2d Cir.1956) (affirming correction of judgment so that settlement monies paid earlier to plaintiff would not be deducted from jury's damage award); and *United States v. Wissahickon Tool Works, Inc.*, 200 F.2d 936, 940–41 (2d Cir. 1952) (Rule 60(b) can be used to add amounts erroneously left out of judgment). *Cf. Ivor B. Clark Co. v. Hogan*, 296 F.Supp. 407, 410 (S.D.N.Y.1969) (correcting "inadvertent judicial error" where district court failed to determine exact amount of mortgagees' obligation to judgment creditor).

Indeed, in the Oneida's supporting memorandum, it clearly states that they "agree that the error in computing damages should be corrected, even though it requires modifying amounts expressed as factual findings in the August 29th opinion." Pl. Memo. at 12. Accordingly, mindful of its limited role due to

---

**2.** Like the Oneida, the Counties do not specify in their Notice of Motion upon which particular subsection of Rule 60(b) they are relying. From their supporting memorandum of law though, the Counties make it abundantly clear that they are relying upon subsection one of that Rule.

**3.** This sum is in keeping with the Second Circuit's directive in *Oneida IV,* that those lands not be discounted. *See Oneida IV,* 719 F.2d at 542.

**4.** As with the Oneida County's highway lands, this sum is consistent with *Oneida IV.*

the previous filing of notices of appeal with the Second Circuit, the court is inclined to grant the Counties' Rule 60(b)(1) motion in all respects.

### III. Plaintiffs' Cross–Motion for Relief from Judgment

#### Background

Just a few days after judgment was entered in accordance with the court's October, 1981 decision, in a letter to Judge Port the Counties raised the possibility of a "slight error" as to the calculation of prejudgment interest. *See* Taylor Decl'n, exh. 7 thereto. Evidently assuming the existence of a yearly lease agreement—a highly doubtful proposition—the Counties urged Judge Port to use as the accrual date December 31, 1968, the last day of the first year for which the Oneida are seeking damages. He declined, instead calculating prejudgment interest commencing from January 1, 1968, the first day of the two year period covered by this lawsuit. *See id.*, exh. 4 thereto at 37 and 38; exh. 5 thereto at 2, ¶ 2; and exh. 6 thereto.

Even though at that time the Oneida had an opportunity to respond to the Counties' argument regarding the proposed change in the accrual date, they did not. *See id.*, exh. 8 thereto. Judge Port did respond though, writing to all parties that he "intended the interest to commence running from the beginning of the period covered by the suit." *See id.* Reiterating his reasons for using the January 1, 1968 accrual date, Judge Port wrote that he had "adopted New York Statutory Law on the question of interest against the counties as it would apply in a condemnation suit for the taking of an easement." *Id.* He further explained that in that situation "interest would begin to run on the date of the taking[.]" *Id.* Then, restating his prior conclusion, Judge Port declared that the accrual date for prejudgment interest would run from "the beginning of the period for which suit was brought[,]" *i.e.* January 1, 1968. *Id.*

For purposes of these motions, the other significant aspect of Judge Port's decision is the applicable rate of interest. In awarding prejudgment interest, Judge Port referred to section 3–a(2) of New York's General Munici-

pal Law. Taylor Decl'n., exh. 4 thereto at 38. Section 3–a sets the "rate of interest on judgments and accrued claims against municipal corporations[;]" and subsection (2) provides in relevant part that the rate "arising out of condemnation proceedings . . . shall not exceed six per centum per annum." NEW YORK GEN. MUN. LAW § 3–a(2) (McKinney 1999). Recognizing that "technically [this] is not a condemnation suit[,]" nonetheless given that there had been references during the hearing to the rule of damages in condemnation proceedings he held "that the rate of interest to be applied in [such] suits provide[s] the best guide under the facts of this particular case." Taylor Decl'n, exh. 4 thereto at 38. Judge Port gave the following rationale for applying that particular interest rate. "The damages here parallel the measure of damages for acquiring temporary easement for road purposes or other purposes[,] [and][p]ossession by the municipalities was acquired without the consent of the rightful owner and adapting New York law of [i]nterest as it relates to claims and [j]udgments against counties, . . . it is appropriate to fix interest at six percent per annum." *Id.* at 38–39.

As noted in *Oneida VI*, "[i]n 1983, the Second Circuit affirmed [Judge Port] on the issue of liability 'but remanded for further proceedings on the calculation of damages.' " *Oneida VI*, 217 F.Supp.2d at 294–95 (quoting *Oneida IV*, 719 F.2d at 527). Before that remand, however, this test case came before the Supreme Court for a second time, and the Court affirmed the Counties' liability, but "remanded to the Court of Appeals for further proceedings consistent with [the Supreme Court's] decision." *Oneida V*, 470 U.S. at 254, 105 S.Ct. at 1262. Eventually, the present case was reassigned to this court to decide the remand issues.

When the prejudgment interest issue finally came before this court, the Oneida mistakenly indicated that the six percent interest rate employed by Judge Port was predicated upon N.Y. C.P.L.R. § 5004, setting forth the rate of prejudgment interest generally. As the Oneida accurately pointed out, effective June 25, 1981, that statutory rate was increased to nine percent per year. *See* Taylor

Decl'n., exh. 3 thereto at 33, n. 11. Due to that statutory rate change, and relying upon Judge Port's accrual date, the Oneida concluded that "prejudgment interest . . . should be calculated at a rate of 6% per annum *from January 1, 1968* through December 31, 1981, and at a rate of 9% per annum for each year thereafter." *Id.,* exh. 13 thereto (emphasis added) (Plaintiffs' Memorandum on the Good Faith Issue at 29, n. 18). Initially this court adopted wholesale the Oneida's position both as to the prejudgment interest accrual date and the rate of same. *See id.,* exh. 3 thereto at 33, n. 11.

A few days later, on August 29, 2002, this court issued *Oneida VI* wherein it *dis*agreed with the Oneida's proposed accrual date, but continued to agree with the Oneida as to the applicable interest rates. *See Oneida VI,* 217 F.Supp.2d at 310, n. 11. Rather than adopting a January 1, 1968 accrual date as did Judge Port, this court held that prejudgment interest begins to run from the time of the filing of the complaint—in this case, February 5, 1970. *See id.* (citing *Cyberchron Corp. v. Calldata Systems Development, Inc.,* 47 F.3d 39, 43 (2d Cir.1995); and *Conway v. Icahn & Co., Inc.,* 16 F.3d 504 (2d Cir.1994)). That same day the Clerk of the Court entered judgment in accordance with Oneida VI. *See* Taylor Decl'n, exh. 1 thereto.

Continuing to agree with Judge Port's January 1, 1968 accrual date, the Oneida filed the present cross-motion challenging this court's use of February 5, 1970 as the prejudgment interest accrual date. Apparently after more closely examining Judge Port's decision, however, the Oneida are also challenging use of section 5004 of the C.P.L.R. as the basis for the prejudgment interest rate. Instead, as previously discussed, the Oneida note that Judge Port actually relied upon section 3–a(2) of the General Municipal Law, and so too should this court.

### Discussion

This cross-motion is not so easily resolved as was the Counties' motion to amend. Unlike the Oneida, who are *not* opposing the Counties' motion, the Counties are vigorously opposing the Oneida's motion. Furthermore, in contrast to the Counties' motion, as will

seen, there is a procedural hurdle to this cross-motion that was not present in the Counties' motion. What is more, the issues which this cross-motion raises are more complex than simply correcting an inadvertent mathematical error.

The Oneida maintain that pursuant to Fed. R.Civ.P. 60(b)(6), they are entitled to relief from the court's August 29, 2002 judgment based upon the law of the case doctrine. From the Oneida's standpoint, that doctrine precludes this court from deviating from the January 1, 1968, accrual date adopted by Judge Port. Relying upon what has become known as the mandate rule, a subsidiary of the law of the case doctrine, the Oneida strongly urge that this court "exceeded the scope of its jurisdiction" by changing the accrual date. *See* Pl. Memo. at 2. Second, they are taking the position that this court should adhere to Judge Port's prior decision with respect to the accrual date because none of the recognized exceptions to that doctrine apply. Lastly, the Oneida assert that it was "clear error" for this court to change the accrual date after remand, and thus "correction of the judgment now is in the interests of justice." *Id.* at 12.

As to the mandate rule, the Counties retort that because the Second Circuit never reviewed the prejudgment interest issue, let alone the accrual date issue, the Oneida's reliance upon that rule is "inapposite[.]" Defendants' Memorandum of Law in Response to Plaintiffs' Cross–Motion for Relief from the August 29 Judgment and in Reply to Plaintiffs' Response to Defendants' Motion for Relief from Judgment ("Def.Resp.") at 5. The primary thrust of the Counties' response is that it was within this court's "broad discretion" to change the accrual date. *See id.* at 6. Furthermore, relying upon the settled rule that an intervening change in controlling law permits a court to deviate from the law of the case doctrine, the Counties reply that in altering the accrual date this court properly exercised its discretion because there was such a change in law. More specifically, the Counties believe that the Supreme Court's decision in *Kansas v. Colorado,* 533 U.S. 1, 121 S.Ct. 2023, 150 L.Ed.2d 72 (2001), represents an intervening change in the control-

ling law between Judge Port's 1981 judgment and this court's August 29, 2002 judgment.

Then, relying upon another exception to the law of the case doctrine, which allows departure therefrom due to clear error or manifest injustice, the Counties also contend that Judge Port's earlier choice of an accrual date falls within that particular exception. *See* Def. Resp. at 3. Accordingly, the Counties strongly urge this court to adhere to its own determination at least insofar as the accrual date is concerned.

In reply the Oneida emphasize that the primary basis for their reliance upon the law of the case doctrine is the "mandate rule," one branch of that doctrine. *See* Plaintiff's Reply Memorandum in Support of Cross–Motion for Relief from Judgment ("Pl.Reply") at 1and 2. The Oneida claim that "the mandate rule bars reconsideration of rulings that could have been raised on appeal, whether they were raised or not." *Id.* at 2. Thus because as the Oneida view it, although the Counties challenged Judge Port's use of the January 1, 1968 accrual date in a letter submitted directly to him, because they did not later raise that issue on appeal the Counties have waived their right to do so. Nor do "[t]he Counties ... satisfy even the more flexible law of the case standard[,]" according to the Oneida. *Id.* at 6. The Counties do not meet that standard because, the Oneida argue, *Kansas* does not represent an intervening change in controlling law. Finally, directly contradicting the Counties, the Oneida declare that Judge Port's decision was neither "clearly erroneous" nor "unjust." *Id.* at 7. Thus, the Oneida conclude that this court should grant relief from the judgment to reset the accrual date to January 1, 1968, as originally set forth by Judge Port following the remand by the Second Circuit. *Id.* at 9.

### A. Rule 60(b)(6) Legal Standard [5]

Before delving into whether or not the Oneida's Rule 60(b)(6) cross-motion is meritorious, it is necessary to address a prelimi-

nary issue overlooked by the Counties and barely touched upon by the Oneida—the governing legal standard for a motion under that particular subsection. Subsection six of Rule 60(b) is an umbrella provision allowing for relief for "any other reason justifying relief from the operation of judgment." *See* Fed. R.Civ.P. 60(b)(6). Although "[t]he scope of (b)(6) has been variously interpreted[,]" *Nemaizer v. Baker,* 793 F.2d 58, 63 (2d Cir. 1986), one theme emerges loud and clear: courts are accorded a great deal of discretion thereunder, as Judge Learned Hand recognized fifty years ago. *See United States v. Karahalias,* 205 F.2d 331, 333 (2d Cir.1953) ("read[ing] ...subsection [60(b)(6)] as giving the court a discretionary dispensing power over the limitation imposed by the Rule itself on subsections (1), (2) and (3)[ ]"). More recently, that Rule has been similarly described as " 'provid[ing] a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses[.]' " *Thompson v. City of Mount Vernon,* No. 93 CV 4788, 2002 WL 562653, at *1 (S.D.N.Y. April 15, 2002) (quoting *Transaero, Inc. v. La Fuerza Area Boliviana,* 24 F.3d 457, 461 (2d Cir.1994)) (other citation omitted).

Perhaps because of the breadth of Rule 60(b)(6), the applicability of that Rule is fairly circumscribed: a motion to vacate, alter or amend a judgment thereunder "should be used *only in 'extraordinary circumstances.'* " *Butler v. Phlo Corp.,* No. 00 CIV. 1607, 2002 WL 1402007, at *1 (S.D.N.Y. June 28, 2002) (quoting *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988)) (emphasis added). In a similar vein, it is proper to invoke Rule 60(b)(6) upon a showing "that the judgment may work an extreme and undue hardship." *Shor International Corp. v. Eisinger Enterprises, Inc.,* No. 90 Civ. 2353, 1993 WL 452546, at *1 (S.D.N.Y.

---

**5.** The Oneida's Notice of Motion does not specify upon which subsection of Rule 60(b) they are relying. In their supporting memorandum, however, the Oneida specifically refer to subsection 6 of that Rule, albeit only once. *See* Pl. Memo. at 12. That is the only subsection which could apply given the Oneida's reliance upon the law of the case doctrine as the basis for granting relief from judgment under Rule 60(b)(6). Clearly such an argument does *not* fall within the other five provisions of Rule 60(b).

Nov.3, 1993) (citing *Nemaizer*, 793 F.2d at 63).

As is readily apparent by now, a motion under Rule 60(b) "is addressed to the sound discretion of the trial court[.]" *Matter of Emergency Beacon Corp.*, 666 F.2d 754, 760 (2d Cir.1981). And, as the Second Circuit has specifically acknowledged, "this discretion is especially broad under subdivision (6), because relief under it is to be granted when appropriate to accomplish justice." *Id.* (internal quotation marks and citations omitted). By the same token, given a court's broad discretion under Rule 60(b)(6), it "may also deny ... relief [thereunder] in light of the particular circumstances of the case." *Hernandez v. United States*, No. 99 Civ. 4303, 2000 WL 744148, at *1 (S.D.N.Y. June 8, 2000) (quotation marks and citations omitted) (emphasis added). Not surprisingly then, "[a]ppellate review of a decision to grant or deny relief under this rule is ...restricted to determining whether the court abused its discretion." *Emergency Beacon*, 666 F.2d at 760 (citation omitted). It is against this standard which the court must consider the Oneida's cross-motion.

### B. Law of the Case Doctrine

■ There are two separate branches to the law of the case doctrine, both of which the Oneida are relying upon in arguing for relief from the August 29, 2002 judgment. The first, and what has been described as "a more powerful version of the law-of-the-case doctrine[,]" *Independent Petroleum Ass'n of America v. Babbitt*, 235 F.3d 588, 597 (D.C.Cir.2001) (citations omitted), is the "so-called mandate rule." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir.2002) (internal quotation marks, citation and footnote omitted), *petition for cert. filed*, (Feb. 6, 2003) (NO. 02–1191). Basically that rule "requires a trial court to follow an appellate court's previous ruling on an issue in the same case." *Id.* (citations omitted).

■ "The second and more flexible branch [of the law of the case doctrine] is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling

on the issue by a higher court." *Id.* Under this branch, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, ... unless cogent and compelling reasons militate otherwise[.]" [6] *Id.* (internal quotation marks and citations omitted).

The Oneida and the Counties did not always neatly distinguish between the mandate rule, the prior decision rule and the broader law of the case doctrine, which encompasses both of those rules. There is considerable overlap between the two rules, but for the sake of accuracy and completeness, the court will separately address both aspects of the law of the case doctrine. Separate consideration of the mandate and the prior decision rules is especially appropriate given that the parties make different arguments as to each.

### 1. Mandate Rule

Following the Supreme Court's remand in *Oneida V*, the Second Circuit issued a mandate, among other things, "remand[ing] for further proceedings to determine the good faith claims of the Counties as they bear on any set-off for improvements made on the property, *and for recomputation of damages*[.]" Taylor Decl'n, exh. 9 thereto at 2 (emphasis added). Precisely the same language is found in the Second Circuit's earlier instructions to the district court on remand in *Oneida IV*. See *Oneida IV*, 719 F.2d at 544 (emphasis added) ("remand[ed] for further proceedings to determine the good faith claims of the Counties as they bear on any set-off improvements made on the property, and for *recomputation of damages*[ ]"). Consistent with the Second Circuit's mandate, Judge Port issued an "Order on Remand" basically mirroring the Circuit mandate, including ordering that on remand "the damages be recomputed in accordance with the opinion of the Court of Appeals[.]" Taylor Decl'n, exh. 10 thereto at 3.

The crux of the Oneida's mandate rule argument is that by differing with Judge Port as to the applicable accrual date, this

---

6. For the sake of brevity, hereinafter whenever possible the court will refer to this second branch in terms of the "prior decision" aspect of the law of the case doctrine.

court "exceeded its jurisdiction under the terms of the Second Circuit's remand[.]" Pl. Memo. at 2. More specifically, the Oneida assert that that mandate does "*not* leav[e] open issues with respect to ... prejudgment interest[,]" such as the accrual date. *See id.* at 9 (emphasis added). Consequently, the Oneida reason that when this court altered Judge Port's use of January 1, 1968 as the accrual date, it lacked the authority to do so because the mandate did not encompass that issue.

Moreover, the Oneida are making what amounts to a waiver argument, asserting that the "mandate rule bars reconsideration of rulings that *could have been* raised on appeal, whether they were raised or not." Pl. Reply at 2 (emphasis added). The Oneida acknowledge that the Counties did raise the accrual date issue directly with Judge Port shortly after the October 5, 1981 judgment. *See* Taylor Decl'n., exh. 7 thereto. Nonetheless, the Oneida reason that the fact that the Counties did not raise the prejudgment interest accrual date on appeal precludes them from doing so now.

Insofar as the scope of the mandate is concerned, the Counties did not directly respond to the Oneida's argument that that remand is "limited," and thus the court "exceeded its jurisdiction" thereunder by deviating from the January 1, 1968 accrual date adopted earlier in this litigation. *See* Pl. Memo. at 2. The Counties did expressly respond to the Oneida's waiver argument, however, taking the position that the mandate rule is "inapposite" because "the Second Circuit never addressed [the pre-judgment interest] issue." Def. Resp. at 6. The court will separately address the scope of the mandate rule, and the issue of whether, based upon that rule, the Counties waived their right to contest Judge Port's choice of accrual date at this late point in the litigation.

### 2. Scope of the Mandate

■ A mandate "describes the duty of the district court on remand upon receipt of the mandate, which is the appellate court's direction to the trial court[.]" *United States v. Ben Zvi,* 242 F.3d 89, 95 (2d Cir.2001) (internal quotation marks and citation omitted).

The mandate rule provides that " 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.' " *Babbitt,* 235 F.3d at 596–97 (quoting *Briggs v. Pennsylvania R.R. Co.,* 334 U.S. 304, 306, 68 S.Ct. 1039, 1041, 92 L.Ed. 1403 (1948)). Thus, "the *court to which* [the case] is remanded *must* proceed in accordance with the mandate *and* such law of the case as was established by the appellate court." *Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76, 79 (2d Cir.1997) (internal quotation marks and citation omitted) (emphasis added). It may "not consider questions which the mandate has laid to rest." *In re Highland Financial Corp.,* 216 B.R. 109, 113 (Bankr.S.D.N.Y.1997) (citations omitted). Stated somewhat differently, "[t]he mandate rule compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Bryce,* 287 F.3d 249, 253 (2d Cir. 2002) (internal quotation marks, citations and emphasis omitted). With these principles carefully in mind, this court will proceed to review *Oneida IV,* and the mandate issued in connection therewith, to ascertain whether the Second Circuit either expressly or impliedly decided the accrual date issue.

■ Examination of the Second Circuit's mandate in light of the foregoing principles reveals that is was *not* as "limited and specific" as the Oneida are construing it. *See* Pl. Memo. at 9. First of all, it is readily apparent that the prejudgment interest issue, which necessarily embodies the accrual date, was *not* directly presented to the Second Circuit on appeal of Judge Port's decision. Indeed, this is one issue upon which the parties agree, albeit they offer slightly different characterizations as to what transpired on appeal. The Oneida declare that "[n]o party disputed the accrual date for prejudgment interest on appeal." *Id.* 4. The Counties soundly reason that because "[t]he accrual date for pre-judgment interest was never appealed, and [hence] never addressed by the Second Circuit[,]" that issue was undisputed. *See* Def. Memo. at 3.

Given the undisputed fact that the accrual date for prejudgment interest was not before

the Court in *Oneida IV,* plainly the Court could not have "expressly decided" that issue. Moreover, even a cursory review of *Oneida IV* reveals that beyond the simple recognition that Judge Port included "interest" in his damage award, the Second Circuit made no other mention of interest. *See Oneida IV,* 719 F.2d at 540. Based upon this record, undoubtedly the Second Circuit in *Oneida IV* did *not* "expressly" decide the accrual issue.

Nor did the Court in *Oneida IV* decide that issue "by necessary implication." Indeed, just the opposite conclusion can be drawn from the Second Circuit's mandate, explicitly requiring "recomputation" of damages on remand. *See* Taylor Decl'n, exh. 9 thereto at 2.[7]

To be sure, as the Oneida are quick to point out, the Counties readily concede "that 'the Second Circuit did not remand on the subject of prejudgment [interest].'" Pl. Reply at 2 (quoting Def. Memo. at 5). As should be obvious by now though, the Court *did* remand for recomputation of damages. In that regard, *both* the Oneida and the Counties are failing to take into account in the fact that "[p]rejudgment interest ... *is part of* the *actual damages* sought to be recovered." *Monessen Southwestern Ry. Co. v. Morgan,* 486 U.S. 330, 335, 108 S.Ct. 1837, 1848, 100 L.Ed.2d 349 (1988) (emphasis added) (and cases cited therein); *see also Miller v. Robertson,* 266 U.S. 243, 258, 45 S.Ct. 73, 78–79, 69 L.Ed. 265 (1924) (citations omitted) ("[W]hen necessary in order to arrive at fair compensation, the court in the exercise of [its] sound discretion may include interest or its equivalent as an element of damages.") Hence, upon remand of this action for "recomputation of damages," necessarily included in that remand was recalculation of prejudgment interest and concomitant issues such as the rate and accrual date of that interest. As should be readily apparent, then, the prejudgment interest issue and related issues such as the accrual date issue were not laid to rest by either the *Oneida IV*

decision nor by the *Oneida IV* mandate. Indeed, it would be illogical to conclude that the Second Circuit in *Oneida IV* impliedly decided the prejudgment interest issue given that, as just explained that one specific aspect of the remand was to recompute the damages, which includes prejudgment interest.

By comparison, in *Tran v. Tran,* No. 91 CIV. 6818, 2002 WL 31108362 (S.D.N.Y. Sept.23, 2002), invoking the mandate rule, the district court held that the defendants were precluded from asking for a reduction in the district court's earlier award of attorneys fees and costs, because "the Court of Appeals did not disturb the ... prior award of attorney's fees[.]" *Id.* at *2. Thus, the court reasoned, "the implication [wa]s that [the issue of attorneys fees and costs] was affirmed and reconsideration was precluded." *Id.*

Plainly that reasoning does not apply here. By "disturbing" Judge Port's damage award, the implication by the Second Circuit is the exact opposite as it was in *Tran.* Remanding broadly speaking on the issue of damages, and requiring the district court to, *inter alia,* recompute the same strongly implies that the Second Circuit did not affirm that damage issue, nor the closely related issue of the accrual date.

To summarize, because in *Oneida IV* the Second Circuit neither expressly or impliedly decided the issue of prejudgment interest, the mandate rule does not compel this court to follow as the law of the case Judge Port's ruling as to the accrual date. Similarly, there was no law of the case which the Second Circuit in *Oneida IV* established therein as to prejudgment interest. Therefore, the Oneida's argument that this court exceeded the scope of the Second Circuit's mandate by revisiting the accrual issue is unavailing.

### 3. *Waiver* [8]

#### a. *"Reasonably Understood"*

■ The Oneida concentrate entirely upon the general prohibition under the mandate

7. The remand instructions contained in *Oneida IV,* as well as Judge Port's remand order are nearly identical in that regard. *See Oneida IV,*

719 F.2d at 544; and Taylor Decl'n, exh. 10 thereto at 3.

8. It is possible for the concept of waiver to come into play regardless of which branch of the law

rule that "where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone," district courts may not reopen that issue on remand. *See Ben Zvi,* 242 F.3d at 95 (citations omitted). The Oneida recite a significant exception to that general prohibition, *i.e.* that on remand a trial court may reopen an issue despite a party's failure to raise that issue on appeal, if "the mandate can *reasonably be understood* as permitting it to do so." *Id.* (citations omitted) (emphasis added). In application, however, the Oneida overlook that exception. As a result of that omission, the Oneida did not consider the Second Circuit's explicit directive in *Ben Zvi,* that "[to] determine whether an issue remains open for reconsideration on remand, the trial court should look to *both* the *specific dictates* of the remand order as well as the *broader spirit* of the remand." *See id.* (internal quotation marks and citation omitted) (emphasis added).

■ The remand in the present case easily falls within that exception: it can "reasonably be understood as permitting" this court to reopen the prejudgment interest issue. That is so because, as previously explained, such interest is a component of damages and the remand directed recomputation of damages as well as other issues. For that same reason, even though specific reference to prejudgment interest in *Oneida IV,* its remand order, or in any of the related orders was lacking, it is patently obvious that that issue was within "the broader spirit of the mandate." *See id.* To construe the mandate narrowly, as do the Oneida, would mean that although on remand a district court could reconsider and recalculate damages, it could not recalculate the inextricably intertwined issue of prejudgment interest. Plainly such an anomalous result would be contrary to the "broader spirit" of the Circuit's remand directing, *inter alia,* "recomputation of damages." Thus, because the Second Circuit's mandate in *Oneida IV* can "reasonably be understood" as permitting this court on remand to reopen the issue of the prejudgment interest accrual date, the Counties can*not* be deemed to have waived that issue on appeal.

of the case doctrine a party is relying upon, but the Oneida are arguing waiver only with respect

### b. *Opportunity and Incentive*

The Oneida maintain that "[t]he Counties elected not to raise any issues regarding the computation of damages or the accrual date for prejudgment interest[,]" and hence they are deemed to have waived those issues. *See* Pl. Memo. at 4. Given that supposed waiver, the Oneida reason that Judge Port's decision as to the accrual date became the law of this case, which this court was bound to follow. The court disagrees; the Counties' conduct on appeal did not amount to a waiver.

■ "An issue is not considered waived, . . . if a party did not, at the time of the purported waiver, have *both* an *opportunity and* an *incentive* to raise it . . . on appeal." *Quintieri,* 306 F.3d at 1229 (citations omitted) (emphasis added); *see also Aviall, Inc. v. Ryder System, Inc.,* 110 F.3d 892, 898 (2d Cir.1997) (emphasis added) ("when there has been *no review* even though an *appeal* has been *taken,* it is equivalent to the party not having had an opportunity to appeal, and *prevents* the *challenged decision* from *becoming* the *law of the case*[ ]"). Arguably in *Oneida IV* the Counties had an opportunity to raise the prejudgment interest, including the accrual date. Despite that opportunity, as discussed next, the Counties had practically *no incentive* to raise such issues on appeal.

■ The Oneida suggest that because the Counties "had not one, but two opportunities to challenge the date for accruing prejudgment interest on appeal," their failure to do so results in waiver of that issue. *See* Pl. Memo. at 8. By emphasizing the number of supposed missed opportunities for appeal the Oneida are missing the point. Agreeing with the First Circuit, in *Quintieri* the Second Circuit affirmed that " '[w]hether there is a waiver depends *not* . . . on *counting* the *number* of *missed opportunities* . . . to raise an issue, but on *whether* the party had *sufficient incentive* to raise the issue in prior proceedings.' " *Quintieri,* 306 F.3d at 1229 (quoting *United States v. Ticchiarelli,* 171 F.3d 24, 32–33 (1st Cir.1999)) (emphasis added). Therefore, as will be seen, the number of

to the mandate rule. This court, too, will limit its waiver discussion accordingly.

missed opportunities here is practically irrelevant given that the Counties had almost no incentive to raise prejudgment issues on appeal.

The Counties' incentive to raise prejudgment interest issues on appeal was almost nil because at least until the Supreme Court's second *Oneida* decision in 1985, the Counties' liability was anything but certain. When the parties first began litigating this test case over 30 years ago, and indeed for many years thereafter, liability issues dominated with little or no thought given to the possible consequences of a finding of liability. *See Oneida IV,* 719 F.2d at 544–45 (Meskill, C.J.dissenting) (unequivocally stating the majority's decision was "wrong[,]" and recognizing the "far reaching ... implications" of that decision, noting nothing therein to "prevent the Oneida or any other tribe from suing for the full value of all land taken from them at any time during our nation's history in contravention of federal law—to say nothing of the possibility of bringing an action for ejectment[ ]"). It is easy to see why liability issues were at the forefront of this litigation, while damage issues took a back seat.

Compounding the Counties' lack of incentive to raise damage issues, and especially prejudgment interest issues, is the fact that this is a "test case" involving a relatively insignificant number of acres. Ultimately then the damage award of $16,694.00, even with prejudgment interest as calculated by Judge Port, was relatively inconsequential.[9] Furthermore, as a "test case," at the filing of the complaint and for many years thereafter, the motivating force behind this case was to establish legal liability in favor of the Oneida based upon Nonintercourse Act violations. Given the many unresolved liability issues at the commencement of the present test case, it is understandable that until more recent years, the Counties, as well as the courts, would focus primarily upon liability issues.

In *Quintieri,* the Second Circuit held that "the district court may consider issues made newly relevant by the court of appeals' deci-

sion—whether by the reasoning or by the result[.]" *Quintieri,* 306 F.3d at 1230 (internal quotation marks and citations omitted). Here, at the risk of sounding repetitious, one of the "results" in *Oneida IV* was a remand for the purposes of recalculating damages. Given that result, it is easy to see how the accrual date issue became "newly relevant," especially given the test case status of this action. When damages had to be recalculated, so did prejudgment interest.

Consequently, given the evolving state of the law at the time and, until fairly recently, the heavy emphasis on liability, this court has little difficulty in finding that while perhaps the Counties had an opportunity to raise various prejudgment interest issues on appeal, there incentive to do so was virtually non-existent. Accordingly, the Counties did not waive their right to raise the prejudgment interest issue on appeal premised upon the theory that they had an opportunity and incentive to do so, yet failed to do so.

To summarize, insofar as the mandate rule is concerned, that rules does not, in this court's opinion, require a finding that Judge Port's choice of accrual date is the law of the case. No such finding is required because (1) the Second Circuit's mandate can be reasonably understood as allowing a district court to revisit the accrual date issue; and (2) the Counties did not waive their right to pursue that issue on remand. Succinctly put, the mandate rule does not provide the Oneida with a vehicle for obtaining relief from the August 29, 2002 judgment premised upon the theory that January 1, 1968 is the law of the case as to the accrual date.

### 4. *Prior Decision Rule*

As the Oneida make abundantly clear, the prior decision branch of the law of the case doctrine is *not* the emphasis of their cross-motion. Rather, it is the mandate rule which the Oneida firmly believe "applies here[.]" *See* Pl. Reply at 2; *see also id.* at 4 ("The mandate rule governs.") Nonetheless, hav-

---

9. The relative insignificance of that damage award is demonstrated most clearly by the jury's award in *Cayuga* of $36,911,672.62, along with this court's award of $211,000,326.80 in prejudgment interest. *See Cayuga XVI,* 165 F.Supp.2d at

366. Those awards were made in recognition of the fact that the treaties at issue therein were invalid under the Nonintercourse Act, and thus roughly 64,000 acres had been unlawfully taken from the Cayuga more than 200 years earlier.

ing found that the mandate rule does *not* preclude this court from revisiting the accrual date issue, the court must next consider what is effectively the Oneida's alternative argument. In that regard, the court must examine the potential applicability of the prior decision rule to this case.

As previously identified, another aspect of the law of the case doctrine is a court's "obligation" to "adher[e] to its own decision at an earlier stage of the litigation." *Ben Zvi*, 242 F.3d at 95 (internal quotation marks and citation omitted). This obligation applies with equal force "to the decisions of a coordinate court in the same case as to a court's own decisions." *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 815, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988) (citations omitted); *cf. Mayer v. Cornell University, Inc.*, 909 F.Supp. 81, 83 (N.D.N.Y.1995) (citations and emphasis omitted), *aff'd mem.*, 107 F.3d 3 (2d Cir.1997) (reassignment to another district court does not preclude reconsideration by transferee court "because non-final district court orders and rulings may be modified to same extent if the case is reassigned to another judge[ ]"). Reassignment alone thus does not impact this court's obligation to adhere to Judge Port's prior ruling as to the accrual date. Irrespective of reassignment, a court is permitted to deviate from a prior ruling in the same litigation upon a showing of "cogent and compelling reasons[.]" *See Quintieri*, 306 F.3d at 1230 (citations omitted).

### a. Law of the Case Exceptions

The parties agree that Judge Port's prior ruling as to the accrual date is the law of the case under the prior decision branch of the law of the case doctrine. The disagreement is in terms of whether any of the exceptions thereto govern this action. As the parties opposing applying the law of the case doctrine, if the Counties can satisfy any of the well-recognized exceptions to that doctrine, this court would be under no obligation to adopt Judge Port's accrual date. *Cf. United States v. Castillo*, 179 F.3d 321, 327 (5th

Cir.1999) (citation omitted) (party seeking reversal of an earlier decision in an action, based upon the law of the case doctrine, bears burden of showing applicability of one of the three exceptions thereto); and *Shore v. Warden, Stateville Prison*, 942 F.2d 1117, 1123 (citation omitted) (7th Cir.1991) (petitioner seeking reconsideration of habeas corpus petition, on basis of law of the case doctrine, had burden of showing that that petition fell within one of the three recognized exceptions to that doctrine). By the same token, if the Counties cannot meet their burden of proof in this regard, the Oneida will prevail on their cross-motion.

 There are three well recognized exceptions to the law of the case doctrine. "In general a court 'will only reconsider a prior decision in the same case if there has been [ (1) ] an intervening change in controlling law, or [ (2) ] there is new evidence, *or* [ (3) ] a need to correct a clear error of law *or* to prevent manifest injustice.' " *Harris v. Key Bank Nat. Ass'n*, 193 F.Supp.2d 707, 710 (W.D.N.Y.) (emphasis added) (quoting *United States v. Sanchez*, 35 F.3d 673, 677 (2d Cir.1994)), *aff'd on other grounds*, 51 Fed. Appx. 346 (2d Cir.2002); *see also Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, No. 91–9432, 2003 WL 402156 (2d Cir. Feb.20, 2003) (reciting same factors in context of Fed.R.Civ.P. 54(b), permitting revision of orders or other decisions prior to the entry of a final judgment). The Oneida, with almost no analysis, quickly dismiss the possibility that any of these exceptions are relevant here.

The Counties, on the other hand, are emphatic that both the first and third exceptions apply.[10] Therefore this court is not bound to follow Judge Port's accrual ruling as the law of the case, reason the Counties.

### i. Intervening Change in Controlling Law [11]

 According to the Counties, the Supreme Court's decision in *Kansas v. Colo-*

---

10. Because the Counties do not even hint that the second exception pertaining to new evidence might apply here, the court will limit its analysis accordingly.

11. For the sake of brevity hereinafter, for the most part, the court will refer to this exception in terms of a "change in law."

*rado, supra,* is an "intervening change in controlling law[,]" which "clarified the appropriate accrual date for pre-judgment interest[,] by holding that the accrual date for such is the filing date of the complaint." *See* Def. Reply Memo. at 8 (citation omitted). Along with *Kansas,* the Counties maintain that the two Second Circuit decisions cited in *Oneida VI, Cyberchron,* and *Conway,* both decided well after Judge Port's 1981 decision, provided ample support for this court "to revisit and modify that prior decision" as a result of a change in law between that decision and this court's August 2002 decision. *Id.* at 9

Initially the *Oneida* did not mention *Kansas.* In their reply memorandum they did discuss *Kansas,* however, basically asserting that it does *not* constitute a change in law because: (1) it is factually distinguishable; and (2) the Supreme Court was split as to the appropriate accrual date. Therefore, the Oneida argue, the first exception to the law of the case doctrine does not apply here.

To further refute the Counties' change in law argument, the Oneida claim that neither *Cyberchron* nor *Conway* are "inconsistent" with Judge Port's decision, and thus neither support the Counties' change in law argument. *See* Pl. Memo. at 10. Then, relying upon this court's decision in *Cayuga XVI,* awarding prejudgment interest in similar land claim litigation for unpaid rent beginning in 1795, "the date of injury or deprivation, or July 27, 1795, the date of the first transaction[,]" *Cayuga Indian Nation of New York v. Pataki (Cayuga XVI),* 165 F.Supp.2d 266 at 363 (N.D.N.Y.2001) (quotation marks and citations omitted), the Oneida conclude that "the law today permits an award of prejudgment interest consistent with Judge Port's October 5, 1981 order and judgment." *See* Pl. Memo. at 11.

As to the potential impact of *Kansas,* the Counties' argument that *Kansas* marked a "change" in "controlling" law is wholly without merit. Given the split among the Justices as to which accrual date to apply, *Kansas* can hardly be deemed "controlling." Six Justices voted in favor of a prejudgment interest award, but four would have started the prejudgment interest running from the

date Colorado should have known it was violating the water rights compact. *See Kansas,* 533 U.S. at 15, n. 5, 121 S.Ct. at 2032, n. 5. Justice Stevens, who delivered the opinion of the court, explained that to "produce a majority for the judgment" four Justices agreed with Chief Justice Rehnquist and Justice Kennedy "that prejudgment interest should run from the date of the filing of the complaint." *Id.* Clearly then, *Kansas* cannot be read as standing for the overriding principle that in *all* cases where prejudgment interest is at issue the proper accrual date is the filing date of the complaint. In addition, the readily apparent factual distinctions between *Kansas,* a case involving claims between two states under a water rights compact, and this land claim litigation underscore a finding that *Kansas* is not "controlling" here.

*Kansas* also cannot be regarded as a "change" in law because even *prior* to that 2001 decision the filing date of the complaint had been recognized as a viable accrual prejudgment interest accrual date, albeit in different circumstances. *See Cayuga Indian Nation of New York v. Pataki,* No. 80–CV–930, 80–CV–960, 1999 WL 224615, at *23 (N.D.N.Y.1999) ("*Cayuga VIII*") (and cases cited therein) ("[W]here it is difficult to ascertain the exact date for accrual of prejudgment interest, the date the action was commenced will serve as the accrual date.") As should be evident by now, *Kansas* is anything but a definitive ruling regarding the governing accrual date for prejudgment interest. Thus *Kansas* is not, as the Counties urge, "truly significant and controlling[.]" *See* Def. Reply at 8.

Finally, the Counties are reading *Kansas* too broadly. Analogizing this land claim action to a state law condemnation proceeding, Judge Port looked to state law for guidance both in awarding damages and in calculating prejudgment interest. *See* Taylor Decl'n, exh. 4 thereto, at 38. Nowhere in *Kansas* did the Supreme Court draw that same analogy, however. Therefore, this court is hard pressed to see how *Kansas* can be read in the manner the Counties are, *i.e.,* "reject[ing] the *very rationale* adopted by Judge Port[.]" *See* Def. Reply at 8 (emphasis added).

Similarly, the court does not read *Kansas* as *"expressly reject[ing]*" arguments that the pre-judgment interest should accrue at a time sooner than t[he] [filing] date of the complaint." *See id.* (emphasis added). Certainly the *Kansas* Court did not "expressly reject" that argument; nor for that matter did it "expressly reject" any other argument as to the proper accrual date for prejudgment interest. Rather the Supreme Court, because it had original jurisdiction, exercised its own discretion in arriving at an accrual date. There is nothing in *Kansas* indicating that the Court established an all encompassing mandatory rule that prejudgment interest begins to accrue as of the filing date of the complaint. In *Kansas,* the Court's decision to begin the accrual of prejudgment interest to coincide with the commencement of the action appears to be limited to the facts of that case. At a minimum *Kansas* demonstrates the factually specific nature of the accrual date inquiry. For all of these reasons, the Counties' reliance upon the first exception to the law of the case doctrine is unavailing.

### ii. "Clearly Erroneous"

The Oneida argue that Judge Port's prior decision was *not* clearly erroneous, whereas the Counties argue just as strongly that it was. As this court has previously noted, "[c]ourts ordinarily have not defined precisely what constitutes clearly erroneous[.]" *See Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.,* No. 88–CV–819, 1992 WL 121726, at *20 (N.D.N.Y. May 23, 1992). What emerges from the scant relevant case law is a strict "very exacting standard." *See Hopwood v. State of Texas,* 236 F.3d 256, 272 (5th Cir.2000). A prior decision must be "more than just maybe or probably wrong[.]" *Id.* at 273. Rather a prior decision will not be deemed clearly erroneous unless the court has " 'a clear conviction of error' with respect to a point of law on which [the] previous decision was predicated[.]' " *Niagara Mohawk,* at *19 (quoting *Fogel v. Chestnutt,* 668 F.2d 100, 109 (2d Cir.1981)) (other citation omitted). Succinctly put, the prior decision must be " 'dead wrong.' " *Id.,* at *20 (quoting *Parts & Electric Motors, Inc.*

*v. Sterling Electric, Inc.,* 866 F.2d 228, 233 (7th Cir.1988)).

Due to the evolving state of the law in terms of land claim remedies, as well as the lack of a dispositive appellate ruling as to an accrual date in this context, this court is not left with a "clear conviction" that Judge Port's choice of accrual date was "clearly erroneous." Likewise, Judge Port's reliance upon the first day of the period for which the Oneidas are seeking damage as the accrual date is not "dead wrong." In fact, as the Supreme Court candidly observed in *Kansas,* "[t]he choice between the two [accrual] dates is *surely debatable;* it is a matter over which reasonable people can—and do—disagree." *Kansas,* 533 U.S. at 15, 121 S.Ct. at 2032 (emphasis added).

The present case starkly demonstrates this debate. No less than three different accrual dates have been offered at some point during this litigation—December 31, 1968, January 1, 1968, and February 5, 1970. Largely depending upon how the damage award is viewed, *i.e.,* as a gross amount or as a lease (whether month-to-month, year-to-year or some variation thereof), there are other possible accrual dates. For example, viewing the Oneida's damages in terms of a month-to-month lease, and assuming no payment is made by the end of the first month of that supposed "lease term," would mean that the time for accruing prejudgment interest would begin on February 1, 1968.

Not only can it be argued that factually there are several possible accrual dates which could govern this case, it can also be argued from a legal standpoint. Most likely because the choice of an accrual date is a factually intensive inquiry, no clear trend emerges under the case law as to a specific accrual date accrual date. *Compare Kookmin Bank v. B.G. Fashion, Inc.,* No. 99 CIV. 8622, 2000 WL 1880315, at *4 (S.D.N.Y. Dec.28, 2000) (citations omitted) (to "simplify calculation" of prejudgment interest on 54 bills of exchange issued over 15 months and having a range of maturity dates, court held that "a reasonable intermediate date [wa]s between the first and last maturity dates[")]; *with Conway,* 16 F.3d at 512 (and cases cited therein) (where a "single reasonable interme-

diate date" was not discernible because plaintiff was unsure as to exactly when he sustained damages and the proof seemed to indicate damages were incurred "at various times over ... several months[,] not unreasonable to choose the commencement date of the action"). Based upon cases such as those just cited, it is no surprise that at one point in the Cayuga land claim litigation, this court identified three distinct "possibilities" for a prejudgment interest accrual date: (1) "the date of injury or deprivation[;]" (2) "the earliest ascertainable date the cause of action existed[;]" and (3) "where it is difficult to ascertain the exact date for accrual of prejudgment interest, 'the date the action was commenced[.]'" *Cayuga VIII,* 1999 WL 224615, at *23 (internal quotation marks and citations omitted).

Surely Judge Port's use of the first day of the damage period cannot be deemed "clearly erroneous" or "dead wrong" given the relevant, albeit inconsistent, case law just outlined. Moreover, Judge Port's choice of an accrual date fully comports with this court's ultimate determination in *Cayuga XVI* that the proper accrual date there was the "date of injury or deprivation," which there was "July 27, 1795, the date of the first transaction." *Cayuga XVI,* 165 F.Supp.2d at 363 (internal quotation marks and citation omitted). Nor does Judge Port's decision strike this court as the Seventh Circuit so descriptively in *Sterling Electric,* put it as "wrong with the force of a five-week old, unrefrigerated dead fish[.]" *Sterling,* 866 F.2d at 233. In fact, as the Oneida soundly reason, "[v]iewing th[is] test case in context, Judge Port reasonably concluded that—for the brief slice of time covered by [this] case—the damages for the two-year period should be treated as a whole, and that payment for the right of possession would be due as in a condemnation case at the beginning, not the end of the period." Pl. Reply at 8 (footnote omitted).

The foregoing discussion leaves no doubt that Judge Port's prior decision, relying upon the first day of the damage period as the accrual date, was *not* "clearly erroneous." Consequently, the Counties are not entitled to rely upon the third exception to the law of the case doctrine to circumvent that prior ruling by Judge Port. Even if the Counties were able to convince this court that Judge Port's prior accrual ruling was clearly erroneous, they still would not be able to meet the requirements of this third law of the case exception. The Counties would be unable to meet that burden because, as briefly outlined below, Judge Port's decision does not work a manifest injustice on them.

### iii. Manifest Injustice [12]

As with the "clearly erroneously" standard, "[c]ourts ordinarily have not defined precisely what constitutes ... manifest injustice[.]" *See* Niagara *Mohawk Power,* 1992 WL 121726, at *20. And, there is even less case law defining "manifest injustice" than there is defining "clearly erroneous." Despite this lack of direction, the court has little difficulty finding that no manifest injustice would result by applying Judge Port's January 1, 1968 accrual date.

Borrowing from state condemnation law, Judge Port calculated both the damages and the prejudgment interest in this case. The Counties admit that perhaps reliance upon that state law was the proper way to ascertain the damage award. According to the Counties, however, that condemnation law analogy does not readily lend itself to resolving prejudgment interest issues such as the accrual date. The Counties maintain that reliance upon state condemnation law results in overcompensation to the Oneida. Such over compensation would occur, explain the Counties, because "[t]he damages awarded to the [Oneida] relate to the rental value of the property ... for the years 1968 and 1969[;][and] ... would not have accrued until the Counties failed to pay timely rent." Def. Resp. at 10. To avoid application of the prior decision rule, the Counties further assert that use of the January 1, 1968 accrual date would conflict with fundamental "principles"

---

**12.** The parties did not specifically address this "cogent and compelling reasons" standard. That failure is not critical though because the parties did address the issue of whether Judge Port's decision amounts to "manifest injustice." In the law of the case context, "cogent and compelling circumstances" and "manifest injustice" are sufficiently akin to be jointly addressed.

of landlord /tenant law such as the general notion that "a tenant is bound to pay interest on installments of rent from the time they become due." *Id.* (citation omitted). Perhaps awarding prejudgment interest from January 1, 1968, violates these principles because if the damages were assessed in terms of the fair rental value, which Judge Port professed to do, and the Second Circuit in *Oneida IV* endorsed, *see Oneida IV*, 719 F.2d at 541, it makes no sense to turn around and compute prejudgment interest from the start of that lease period when no monies would have been due the Oneida then. The record is silent as to exactly when this theoretical lease began or how it was structured. That is because the supposed "lease" is a legal construct formulated to allow some rational means by which to award damages in land claim cases such as this one. Consequently, it is nearly impossible to ascertain when the rent would have become due, and hence would it would become past due and accumulating prejudgment interest.

Judge Port's reliance upon state condemnation law to determine the prejudgment interest award herein does not rise to the level of manifest injustice so as to bring that ruling within the purview of the third law of the case exception. Despite the lack of a clear definition of manifest injustice, it cannot be said that having to pay prejudgment interest beginning January 1, 1968, rather than beginning roughly 25 months later, would amount to manifest injustice to the Counties. A finding of no manifest injustice is particularly appropriate here because the difference between those two dates in terms of the amount of this interest appears relatively inconsequential. Accordingly, because the Counties are unable to establish that Judge Port's decision was either clearly erroneous *or* manifestly unjust, there is no basis for invoking the third exception to the law of the case doctrine.

To summarize with respect to the accrual date issue, the Oneida did fail to "perfectly allege exceptional circumstances[.]" *See In re Krautheimer*, 210 B.R. 37, 44 (Bkrtcy. S.D.N.Y.1997). Nonetheless, in keeping with the "overarching purpose of Rule 60(b) [which is] to allow courts the discretion of correcting errors 'upon such terms as are just[,]' " because the law of the case doctrine required adherence to Judge Port's decision using January 1, 1968 as the accrual date, the Oneida have sufficiently met the exceptional circumstances element of Rule 60(b)(6). *See id.* (citing, *inter alia,* Fed.R.Civ.P. 60(b)). Having met that threshold requirement the Oneida are entitled to relief from the August 29, 2002 judgment, which held that the accrual date was the commencement of this action. Permitting the Oneida to obtain relief from judgment under Fed.R.Civ.P. 60(b)(6) based upon the prior decision branch of the law of the case doctrine is in keeping with the Second Circuit's view that a court's discretion under that Rule is " 'especially broad.' " *Id.* at 43 (quoting *International Controls Corp. v. Vesco,* 556 F.2d 665, 670 (2d Cir.1977)). It is not designed to restrict relief. *Id.* (internal quotation marks and citation omitted).

To this point because the parties have focused almost exclusively on the accrual date issue, this court has deliberately confined its analysis accordingly. Section 3–a(2) of the General Municipal Law, which in relevant part provides for an interest rate in condemnation proceedings against a municipality to be no more than "six per centum per annum." N.Y. GEN. MUN. LAW § 3–a(2) (McKinney 1992). Finding that this land claim case is akin to a condemnation proceeding, *see* Taylor Decl'n, exh. 4 thereto at 38, Judge Port relied upon section 3–a(2) to ascertain the applicable interest rate. *See id.* That statute, *inter alia,* specifically governs the interest rate to be used in condemnation proceedings against municipalities. "[I]t is an elementary rule of statutory construction that the specific statutory provision must be considered over a general one[.]" *Thiele-beule v. M/S Nordsee Pilot,* 452 F.2d 1230, 1232 (2d Cir.1971) (internal quotation marks and citation omitted). Consequently, because section 3–a(2) directly pertains to the prejudgment interest rate in such proceedings and because that is how Judge Port viewed the remedies aspect of this case (and the parties are not challenging that viewpoint), it would thus appear that it was error for this court to endorse the Oneida's initial reference to C.P.L.R. § 5004, the more general statute governing prejudgment interest

awards in this State as to the use of the statutory 6 per cent interest rate

The court deems the Counties' silence as agreement to same. Accordingly, the court is inclined to grant the Oneida's motion for relief from judgment with respect to the applicable prejudgment interest rate. In that event, the court's August 29, 2002 decision and judgment entered in accordance therewith should be amended to reflect this change in statutory basis for the prejudgment interest rate herein. More specifically, as to both Counties, interest should be awarded at six percent per annum from January 1, 1968, and it should be awarded based upon the corrected damage figures set forth earlier in this decision.

### *Conclusion*

As discussed at the outset, when, as here, the parties have filed notices of appeal *before* filing their Rule 60 motions, the court's role is a limited one. Recognizing this limitation, for the reasons set forth above, the court is inclined to grant the Counties' Rule 60(b)(1) motion for relief from judgment so as to correct the inadvertent mathematical errors made in connection with the damages awarded in this court's August 29, 2002 decision and concomitant judgment.

Likewise, the court is also inclined to grant the Oneida's cross-motion under Rule 60(b)(6) because they have made a threshold showing of exceptional circumstances, thus entitling them to relief thereunder. Furthermore, although the court has found that the Oneida are not entitled to relief based upon the mandate rule branch of the law of the case doctrine, they are entitled to relief from judgment based upon the more flexible prior decision branch of that doctrine. Under that second branch, for the reasons set forth herein, the court finds that it did have an obligation to adhere to Judge Port's prior 1981 decision and judgment insofar as his calculation of prejudgment interest both in terms of the accrual date and the rate, *i.e.* January 1, 1968 at 6 per cent per annum. The Counties' inability to meet their burden of showing why any of the exceptions to the law of the case doctrine should apply provides additional support for this court's de-

termination that it is inclined to grant the Oneida's cross-motion in all respects.

Given the procedural posture of this case, however, the court will not grant the sought relief at this time given the pending appeals. *See Thompson,* 180 F.R.D. at 226. "Instead, the court advises the Second Circuit and the parties of its willingness to grant the [Counties'] motion [and the Oneida's cross-motion[.]]" *See id.* "Until such time, if ever, as this case is remanded from the Second Circuit, however, the court will not actually grant that relief." *Id.*

IT IS SO ORDERED.