Jill **BREEDLOVE**, Plaintiff,

v.

Christian **CABOU**, Bruce Crawford, Kristen Cunha, and the General Electric Company, a New York Corporation, Defendants.

Jill **Breedlove**, Plaintiff,

v.

General Electric Company, A New York Corporation; Christian Cabou; Bruce Crawford, and Kristen Cunha; Defendants.

No. 1:03–CV–0948.

United States District Court, N.D. New York.

Dec. 11, 2003.

D'Agostino Krackeler, Baynes & Maguire (Christine Kirwin Krackeler, Esq., of Counsel), Menands, NY, for Plaintiff.

Bond Schoeneck & King (Nicholas J. D'Ambrosio, Jr. Esq., of Counsel), Albany, NY, for Defendants.

## MEMORANDUM–DECISION AND ORDER

MCCURN, Senior District Judge.

### INDEX

| | Page |
|---|---|
| *Introduction* | 259 |
| *Background* | 259 |
| I. *Factual* | 259 |
| II. *Procedural* | 259 |
| A. *Pre–Mediation Events* | 259 |
| B. *Mediation* | 260 |
| C. *Arbitration* | 261 |
| D. *State Court Actions* | 261 |
| *Discussion* | 262 |
| I. *GE Motion* | 263 |
| A. *Post–Removal Procedure* | 263 |
| B. *Reconsideration* | 265 |
| 1. *Rooker–Feldman Doctrine* | 267 |
| 2. *Waiver* | 268 |
| 3. *Rule 60(b)(6)* | 268 |
| a. *"Extraordinary Circumstances"* | 268 |
| C. *Family Medical Leave Act* | 271 |
| 1. *Governing Legal Standard* | 271 |
| 2. *Judgment on the Pleadings* | 271 |
| 3. *Stay/Compel Arbitration* | 272 |
| D. *Title VII and HRL* | 273 |
| 1. *Judgment on the Pleadings* | 273 |
| II. *Plaintiff's Cross–Motion* | 274 |
| A. *Administrative Prerequisites* | 275 |
| B. *Compliance with the Dispute Resolution Program* | 276 |
| C. *Discovery* | 277 |
| D. *Jury Trial* | 277 |
| *Conclusion* | 278 |

## Introduction

From August 1988 through December 2002, when she was terminated, plaintiff Jill Breedlove was employed as a patent attorney for General Electric ("GE") Research and Development Center. In the first instance this lawsuit is about plaintiff's termination, which she characterizes as "a planned retaliatory act which took place over an extended period of time." Appendix of Exhibits to Defendants' Motion to Dismiss ("Def.App."), exh. A thereto at 24, ¶ 25. For the moment though, the focus of this lawsuit is *not* on what led to plaintiff's termination. Rather, the focus of the present motions is upon what transpired *after* plaintiff's termination, *i.e.* how her claims were handled in terms of GE's Dispute Resolution Program ("DRP").

## Background

### I. Factual

Under the DRP, GE employees "agree as a condition of employment to complete the [DRP] before pursuing their covered claims in court." *Id.* at 172, § 2.22. As a "current employee," plaintiff is "deemed to have accepted *completion* of *DRP* as a *requirement before filing* [her] *covered claims* in *court.*" *Id.* at 174, § 2.22(II)(H) (emphasis added). The DRP has four tiers or "levels" of resolution and with the exception of level 1, completion of each level must occur "before proceeding to the next level." *See id.* at 177, § 2.22(O). This means that "[a]n employee's *failure* to *submit covered claims* at *all levels of DRP* within the deadlines established by this procedure *constitutes* a *failure* to *complete* the *DRP*, unless the parties agree to an extension of deadlines or the arbitrator rules that such failure was the result of excusable delay." *Id.* (emphasis added). The DRP's exhaustion requirement mandates that "[f]ailure of a current employee to complete Levels I through IV of DRP prohibits the employee from filing covered claims in court." *Id.* (emphasis added).

Furthermore, the DRP contains deadlines for certain actions. For example, "[GE's] failure to respond at any level of this procedure to the employee's submission of a concern/claim before expiration of the applicable deadline *shall constitute a denial* of the concern/claim from the date of the deadline and enable the employee to submit his/her concern/claim at the next level." *Id.* at 178, § 2.2(Q) (emphasis added). The DRP Policy and Procedure Guide is a comprehensive document, but it is the provisions set forth above which are at the core of these motions.

### II. Procedural

It is necessary to untangle the convoluted procedural web of this action to fully understand the issues which these motions raise. Untangling that web requires a somewhat detailed recitation of the facts.

#### A. Pre-mediation Events

Prior to the commencement of this litigation, by letter dated September 14, 2001, plaintiff notified GE's Corporate Ombudsman that her workplace had become "intolerable" due to the conduct of defendant Christian Carbou, plaintiff's manager, and Kristen Cunha, another defendant and a GE Human Resources ("HR") employee. Plaintiff specifically complained that she and others had been "targeted ... as a result of [their] gender and/or age." Def. App., exh. A at 37. She went on to challenge Carbou's conduct, "in cooperation with the HR department," as being an " 'Unlawful Employment Practice' " as defined in 42 USC § 2000(e) et. Seq. and the New York State Human Rights Law ["HRL."] *Id.*

Less than two weeks later, on September 25, 2001, plaintiff wrote another letter to GE's Obudsman "to clarify" her prior letter. *Id.* at 39. In this second letter plaintiff provided a chronology of events which led up to the September 14th letter, including a dispute about her completion of a performance improvement plan ("PIP"). Describing Mr. Cabou's action as "insidious discriminatory practices[,]" plaintiff concluded by requesting "an investigation with a neutral party and urg[ing] that [GE] initiate whatever policies and procedures, if any, ... to deal with this continuing incidence of *gender based discrimination* [.]" *Id.* at 41 (emphasis added).

Approximately four months later, on February 28, 2002, plaintiff again contacted the Ombudsman in writing regarding this alleged discrimination. At the outset of that letter, plaintiff unequivocally stated that she "felt that [she] was being victimized by [Cabou's] actions in violation of the [HRL] and Title VII ... as part of a pattern of discrimination on the basis of Gender and/or Age." *Id.* at 42. She concludes by informing the Ombudsman that "[i]f no action [w]as taken, and the discriminatory conduct toward [her] continue[d]," then "she [would] be forced to file a complaint with the N.Y. State Division of Human Rights ["the State Division"] and the EEOC." *Id.* at 43.

Still trying to address her complaint through the Ombudsman, plaintiff wrote yet another letter to him on May 1, 2002. This time she was responding to a prior letter from the Ombudsman where evidently he claimed that plaintiff had not responded to a complaint regarding her performance. *See id.* at 45. In that letter Ms. Breedlove states that her supervisor's "direct[ion] to do a[PIP] [was] in direct and obvious retaliation for [her] [initial complaint][.]" *Id.* at 47. Plaintiff further advised that she "continue[d] to suffer ... retaliation and harassment, which ma[de]

it virtually impossible [for her] to do [her] job[,]" and made her "working conditions intolerable." *Id.* at 46 and 47.

In accordance with the typical practice in this dual filing State (New York), on May 16, 2002, plaintiff filed a complaint with the State Division and with the Equal Employment Opportunity Commission ("EEOC"). *See id.* at 83. Several months later, on August 7, 2002, plaintiff amended her complaint "due to further and additional retaliation" against her since those initial filings. *See id.* at 82. The four letters described above were attached to that complaint. In that complaint plaintiff repeats her allegations of retaliation, declaring that she "ha[d] done all that [she] [could] do and utilized all avenues of which [she][was] aware that [were] available to [her] to remedy these actions prior to [the] filing [of] this amended] complaint, all to no avail[.]" *Id.* at 84. The letters and the amended complaint itself are silent as to any tort or contract claims arising out of the events of which plaintiffs is complaining. Indeed, in her amended complaint expressly states that she is making the same "as a result of Gender Discrimination, Harassment and Retaliation in violation of Title VII ... and the New York State Human Rights Law [ ("HRL") ] Section 296[.]" *Id.*

### B. Mediation

At the same time she amended her complaint, on August 7, 2002, plaintiff executed a "submission form" for level III mediation, in accordance with GE's DRP, *id.* at 82, and the parties agreed to that mediation. *See* Affidavit of Nicholas J. D'Ambrosio, Jr. (Aug. 11, 2003) at 3, ¶ 6. Attached to the submission form was a copy of the amended affidavit and complaint described above. *See* Def.App., exh. A at 82. That attachment was in response to GE's request that plaintiff "[i]nclude all

legal claim(s) that arise out of the same facts and include all facts that support [her] legal claim(s)[.]" *Id.* As a result of this agreement to mediate, the parties agreed to defer the matter before the State Division. *See id.* at 204a. On August 19, 2002, GE submitted to the American Arbitration Association ("AAA") a request for "[m]ediation ... in accordance with GE [DRP][.]" *See id.* at 205. The parties did attend a mediation session on November 25, 2002, but they were unable to resolve their dispute. *Id.*, exh. A at 154, ¶ 13; *see also* D'Ambrosio Aff. at 4, ¶ 8.

After that unsuccessful mediation attempt, on December 2, 2002, GE provided plaintiff with its "Level III, post-mediation response[,]" wherein it "denie[d] the allegations of sex discrimination and retaliation[.]" *Id.* at 140 and 141. In addition, GE included "a form to request Level IV of the DRP, arbitration." *Id.* at 140. In so doing, GE notified plaintiff's counsel that "[c]ompletion of Level IV of the DRP is required prior to commencement of an action in court." *Id.*

### C. Arbitration

After receiving plaintiff's "DRP Level IV submission form[,]" by letter dated December 18, 2002, GE advised plaintiff that "[t]he next step under the DRP require[d] the parties to execute and submit to AAA a submission to Arbitration form by December 23, 2002 (seven days from the date of the submission of the Level VI[sic] form)." *Id.* at 246. GE provided plaintiff with that required form, requesting that it be executed and if any changes were necessary, to advise GE. *See id.* By letter dated January 6, 2003, GE provided the AAA with the necessary documentation to initiate a Level IV arbitration, and

requested that the arbitration proceed. *See id.* at 248. Presently "[t]he AAA is holding in abeyance the arbitration of [p]laintiff's statutory discrimination and retaliation claims due to [p]laintiff's commencement of litigation." D'Ambrosio Aff. at 4, ¶ 10.

On January 22, 2003 the EEOC issued its "Notice of Right to Sue" letter. *See* Def.App., exh. A at 249. Following issuance of the EEOC's notice, the State Division dismissed plaintiff's complaint "on the grounds of administrative convenience[,]" because "all the issues concerning ... discrimination based on Sex" could be resolved in federal court litigation. *Id.* at 250.

### D. State Court Actions

On January 15, 2003, plaintiff Jill Breedlove commenced her first of two state court actions arising out of her termination from GE. In her first action she asserts five state law tort and contract based causes of action ("action I"). Plaintiff also asserts a sixth cause of action wherein she is seeking a declaration that essentially level IV arbitration is null and void because it is onerous and cumulative.

In its answer GE [1] asserts a total of ten affirmative defenses. Two of them pertain to plaintiff's alleged failure to submit various claims to the DRP prior to the commencement of this action. GE also asserts three other affirmative defenses directed at plaintiff's sixth cause of action. As one of its first affirmative defenses GE contends that the sixth cause of action for declaratory relief "alleges questions of procedural arbitrability that are for an arbitrator to decide in the first instance." *Id.* at 78, ¶ 78. Second, GE alleges that "[t]he procedural defects alleged in the sixth

---

**1.** Three individual defendants, all GE employees during the relevant time period, also are named as defendants in this action. Those individual defendants are not directly the subject of the current motions.

cause of action, even if true, were not committed with respect to any claim raised in the complaint." *Id.* at 78, ¶ 79. Third, GE asserts that the court must strike this sixth cause of action because allegations that the DRP arbitration process should be declared null and void should have been made in the context "of a special proceeding to stay arbitration." *See id.* at 78, ¶ 80.

In late March 2003, plaintiff sought dismissal of the five affirmative defenses just mentioned. Alternatively, plaintiff sought partial summary judgment as to those defenses, as well as an order compelling discovery. GE cross moved to stay that state court action and to compel plaintiff to submit her claims to DRP, including arbitration. *See id.* at 150.

Before the state court ruled on those motions, and after the EEOC's issuance of its right to sue letter, on April 4, 2003, plaintiff commenced a second state court action against the same defendants, also arising out of her employment with GE ("action II"). In action II she is alleging, *inter alia,* unlawful gender discrimination under Title VII, 42 U.S.C. § 2000e-(3), *et seq.* and the New York Human Rights Law ("HRL"), N.Y. EXEC. LAW § 290, *et seq.* (McKinney 2001 and Supp.2003), and violations of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*

On May 8, 2003, the State Court in action I granted plaintiff's motion to dismiss five of the ten affirmative defenses which GE asserted (defenses two through six), ordered discovery, and denied GE's cross-motion to compel plaintiff to submit her claims to the DRP. Thereafter, on May 28, 2003 GE filed a notice of appeal with the Appellate Division of the New York Supreme Court, Third Department. *See*

Def.App., exh. A at 3. Evidently that appeal was never perfected.

In the meantime, on July 28, 2003, the parties agreed to consolidate the two state court actions. *Id.,* exh. C thereto. The next day, on July 29, 2003, GE removed the consolidated action to this court. A short time later, on August 11, 2003, GE filed its motion in this removed action; and on September 5, 2003, plaintiff responded and filed a cross-motion.

### *Discussion*

Pursuant to Fed.R.Civ.P. 60(b), GE is seeking several forms of relief. GE is seeking dismissal of the FMLA claim, or, alternatively a stay of this action and to compel submission of same to the DRP. As to plaintiff's Title VII and HRL claims, GE seeks a stay of this action and an order compelling arbitration under the DRP. Further, GE is asking this court to reconsider the State Court's Order and reinstate GE's second through sixth affirmative defenses in action I.[2] Then, assuming reinstatement, GE seeks a stay of this action and to compel plaintiff to submit her state law based contract and tort claims in action I to DRP. Alternatively, GE asks this court to adopt the State Court's Order so that GE can "immediately appeal" to the Second Circuit. Defendants' Memorandum of Law in Opposition to Plaintiff's Cross–Motion ("Def. Opp'n Memo.") at 8 n. 3.

Plaintiff is cross moving pursuant to Fed.R.Civ.P. 12(f) to strike the second and third affirmative defenses in action II. Those defenses pertain to plaintiff's alleged failure to exhaust her administrative remedies and her alleged failure to resort to and exhaust GE's DRP in connection

---

**2.** The court is fully aware that actions I and II were consolidated. For ease of analysis the court will continue to distinguish between the two, however.

therewith. Plaintiff also seeks to compel discovery and she requests a jury trial.

### I. GE Motion

The court first will address GE's alternative argument that it should adopt the State Court's Order and permit an immediate appeal to the Second Circuit. The court will consider this issue first because if the court follows GE's suggestion, at least for the time being, it would render moot GE's other arguments and plaintiff's cross-motion.

■ Preliminarily the court observes that removal was proper because, consistent with subsection (b) of the general removal statute, 28 U.S.C. § 1441, the court has subject matter jurisdiction over this action in that it involves claims, among others, "arising under laws of the United States[,]" e.g. Title VII and the FMLA. Furthermore, it appears that this matter was timely removed in that the parties agreed to a service date of July 14, 2003 as to action II, wherein plaintiff's federal law claims were first asserted. See Affidavit of Christine Kirwin Krackeler (Sept. 4, 2003), exh. B thereto at 3, ¶ 6. On July 29, 2003, within the 30 day time frame for removal provided for in 28 U.S.C. § 1446(b), GE filed its Notice of Removal. See id.

■ Even if removal was un timely, the court does not have the authority to sua sponte remand this action now because the 30 day time frame for remand based upon procedural defects under 28 U.S.C. § 1447(c) has lapsed. See American Home Assurance Co. v. RJR Nabisco Holdings Corp., 70 F.Supp.2d 296, 299 (S.D.N.Y.1999) (citations omitted) (court itself could have remanded case for defects other than subject matter jurisdiction during section 1447(c)'s 30 day period, but because it chose not to do so during that time period, remand option unavailable once that time period had passed). Fur-

thermore, because plaintiff Breedlove is not raising the issue of timeliness, and because she filed a cross-motion, she has acquiesced to removal. See Town of Moreau v. New York State Dep't of Environmental Conservation, No. 96–CV–983, 1997 WL 243258, at *7 (N.D.N.Y. May 5, 1997) (McCurn, J.) (internal quotation marks, citation and footnote omitted) (by its "action [party can] effectively acquiesce in removal to ... federal forum[,] ... thereby waiv[ing][its] right to object thereto[ ]").

### A. Post–Removal Procedure

■ Having determined that removal was proper, the next issue is "the extent of [this court's] authority over the case once it has been removed[,]" especially where, as here, the state court entered an order prior to removal. See Resolution Trust Corp. v. Bayside Developers, 43 F.3d 1230, 1237 (9th Cir.1994). Courts have taken varying procedural routes when presented with this issue. Initially GE seems to be urging this court to follow a holding of the Fifth Circuit Court of Appeals. There, sitting en banc, the Court held that the district court should simply "take the state judgment as it finds it, prepare the record as required for appeal, and forward the case to the appellate court for review." In re Meyerland Co., 960 F.2d 512, 520 (5th Cir.1992); see also Walker v. Federal Deposit Ins. Corp., 970 F.2d 114, 121 (5th Cir.1992); and In re 5300 Memorial Investors, Ltd., 973 F.2d 1160, 1162 (5th Cir. 1992). Citing the Supreme Court's decision in Granny Goose Foods, Inc. v. Brotherhood of Teamsters, Etc., 415 U.S. 423, 435–36, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974), in Meyerland the Fifth Circuit offered the following rationale: "A case removed from state court simply comes into the federal system in the same condition in which it left the state system." Meyerland, 960 F.2d at 520.

Other Circuits have adopted different procedures, which might be described as disapproving of district courts "rubber-stamping" state court orders or judgments. *See id.* For example, in *Resolution Trust Corp. v. Nernberg*, 3 F.3d 62 (3rd Cir.1993), the Third Circuit held that "[i]n all cases removed to the district court after judgment has been entered by a state court, the *parties may*, within thirty days of the date the case is docketed in the district court, *file motions* to alter, modify, or open the judgment." *Id.* at 68 (emphasis added) (footnote omitted). Then, the Third Circuit instructed, "[if] the motion is denied or if the parties fail to file motions within the thirty-day period, the district should enter an order adopting the state court judgment as its own. Parties then desiring to appeal shall observe the appropriate federal rules of procedure as applicable to a judgment of the district court." *Id.* Thus, in contrast to *Meyerland*, under the Third Circuit's approach, the district court enters a judgment of its own, even if it is based on the state court's rationale.

The Eleventh Circuit has adopted a more stringent process, however. In *Jackson v. American Savings Mortgage Corp.*, 924 F.2d 195, 198 (11th Cir.1991), as another panel of the Eleventh Circuit described it, that Circuit "mandate[d] that before [it] w[ould] review a state court order or judgment in a case that has been removed to federal court, the party seeking appeal must first file a Rule 59 motion to modify or vacate the judgment in the district court." *See Resolution Trust Corp. v. Bakker*, 51 F.3d 242, 244 (11th Cir.1995). Such motion must, according to the dictates of *Jackson*, "be filed within ten days from the date of removal of the case to federal court." The result of following this procedure is that if "the district judge refuse[s] to modify or vacate, then the fiction that the state court judge's acts were the acts of the district judge will have been converted into reality." *Id.*

(quoting *Jackson*, 924 F.2d at 199). In this way, reasoned the *Jackson* Court, a federal court "does not presume to sit as a state appellate court[.]" *Id.* (internal quotation marks omitted).

In *Bakery Centre Associates v. Orientations Gallery, Inc.*, 54 F.3d 688 (11th Cir. 1995), another panel of the Eleventh Circuit, contrasting *Jackson* with other Circuits, noted that "[n]one ... has embraced as rigid a requirement as making a Rule 59(e) motion the prerequisite for federal review." *Id.* at 690 (citations omitted). Nonetheless, the Court in *Bakery Centre* held that it was "bound by *Jackson* and *Bakker* unless and until they are overruled by an intervening Supreme Court decision or by the Eleventh Circuit sitting *en banc.*" *Id.* (citation omitted). Thus, it held that the district court lacked jurisdiction to review the order of a state trial court because upon removal plaintiff failed to timely file a motion pursuant to Fed. R.Civ.P. 59(e) as *Jackson* requires.

"[F]avor[ing] what it termed a "hybrid" of the Third and Eleventh Circuits' approaches, the Fourth Circuit held that *immediately* after removal the district court [sh]ould adopt the state court judgment as its own." *Resolution Trust Corp. v. Allen*, 16 F.3d 568, 573 (4th Cir.1994) (emphasis added). Under this approach, "the judgment would be treated the same as other judgments entered by the district court and the parties would follow the ordinary rules regarding post-judgment remedies. They may file motions pursuant to the applicable Rules of Civil Procedure, or file a timely notice of appeal to the federal appeals court." *Id.*

In contrast to the Eleventh Circuit's procedure, the *Allen* Court soundly explained, "[t]his approach permits, but does not require, the parties to file post-judgment motions[.]" The Fourth Circuit in *Allen* further explained that such an ap-

proach "also allows the district court to consider any new *federal* questions injected into the case .., and require whatever briefing, argument or hearing it deems necessary to resolve these questions and prepare an adequate record for review on appeal." *Id.* (emphasis added). Finally, the *Allen* Court reasoned that "[t]his hybrid procedure also assures that the appeal is based on a judgment actually entered by the district court, and thereby precludes this court from assuming the role of a state appellate court." *Id.*

After reviewing each of the approaches outlined above, the Ninth Circuit "conclude[d] that the 'hybrid' procedure adopted in *Allen* is the best statement of procedure[ ]" and thus the Ninth Circuit followed the *Allen* Court's lead in that regard. *See Bayside Developers*, 43 F.3d at 1238.

Responding to these various possibilities, plaintiff asserts that because the State Court's Order did not "finally determine any of [her] claims[,]" it is not immediately appealable to the Second Circuit. *See* Plaintiff's Memorandum of Law in Support of Her Cross–Motion and in Opposition to Defendants' Motion ("Pl. Memo.") at 14. Thus, from plaintiff's standpoint, adopting the State Court's Order as an order of this district court and then allowing an appeal "would be an exercise in futility and a waste of this Court's time[.]" *Id.*

GE challenges this claimed lack of finality by noting that the Federal Arbitration Act ("FAA"), which plaintiff concedes governs the DRP, Krackeler Aff. 13, ¶ 9, permits interlocutory appeals of "order[s] refusing to stay an action or denying an application to compel arbitration." Def. Opp'n Memo. at 8, n. 3 (citing 9 U.S.C. § 16 (1999)). Nonetheless, the court need not delve into the issue of interlocutory appeals here because GE has retreated from its initial position of urging an imme-

diate appeal, and instead suggests that this court should follow the approach taken by the Third *and* Eleventh Circuits. What GE fails to take into account, however, is that if the court were to adopt that approach, *i.e.* requiring a Rule 59(e) post-*judgment* motion, GE would not be entitled to review of the State Court's Order because it did *not* make such a motion. Indeed, GE could not make a Rule 59(e) motion at this juncture because there is no final judgment yet—state or federal. Thus, because implicit in the approach of the Third and Eleventh Circuits is the existence of a final judgment, even if this court agreed with the rationale of those Courts, it would not adopt that procedure here given the lack of same.

The Second Circuit has yet to address this procedural dilemma. After carefully considering the Circuit Court decisions outlined above, however, this court will follow the "hybrid" approach first articulated by the Fourth Circuit in *Allen, supra* and subsequently adopted by the Ninth Circuit in *Bayside Developers, supra.* Under that approach, the court will deem the State Court's May 8, 2003 Order to have been adopted by this district court immediately upon removal, *i.e.* July 29, 2003. Then, because GE timely filed a Rule 60(b) motion for reconsideration, the court next will address that motion.

### B. *Reconsideration*

As mentioned at the outset, in action I the State Court granted plaintiff's motion to dismiss five of GE's affirmative defenses. More specifically, the state court struck GE's second affirmative defense in action I, which is nearly identical to its third affirmative defense in action II. In both of those defenses GE alleges that plaintiff's "failure to raise her claims first under the DRP and exhaust all levels of the DRP before commencing an action in

court[ ]" bars this litigation. Def.App., exh. A at 78, ¶ 76; and Krackeler Aff., exh. A at 3–4, ¶ 18. As its second affirmative defense in action I, GE asserted that because the claims raised therein, *i.e.* state common law claims, were "never . . . submitted to the first three levels of the DRP[,] . . . the question of whether they are required to be submitted to Level IV arbitration is premature." *Id.* at 78, ¶ 77. The State Court also struck the three affirmative defenses which GE asserted against plaintiff's sixth cause of action. In that cause of action, plaintiff is seeking declaratory relief that level IV arbitration under the DRP should be declared null and void because basically it is onerous and cumulative.

Pursuant to Fed.R.Civ.P. 60(b), GE argues for reconsideration because supposedly the State Court made "clear errors of law and fact" by "wrongfully disregard[ing] plaintiffs' failure to submit her common law claims to the DRP." Def. Memo. at 16. Apparently the State Court's conclusion was predicated upon a finding that GE breached the DRP. The Order itself is silent as to exactly how GE breached the DRP except to state that the "undisputed facts" demonstrate such breach. Def.App., exh. A at 5. A careful review of the record, including the voluminous State Court submissions, shows that this [purported] breach, as found by the State Court, is GE's failure to submit to the AAA a "joint request for arbitration" within the seven day time frame which the DRP mandates. *See id.* at 189, § 2.2(D)(5). And, in the State Court's view, such breach excused plaintiff from submitting her state common law claims (the subject of action I) to DRP.

GE offers several reasons as to why plaintiff should be required to submit her claims to DRP as a prerequisite for the commencement of this litigation. First, by its terms the DRP requires employees to include in the DRP submission form "all covered claims which arise from [the] same set of facts." *Id.* at 179. According to GE, plaintiff did not comply with that provision because she submitted to DRP *only* her Title VII and HRL claims, and not her FMLA and state law claims. Second, GE asserts that the State Court improperly interpreted the DRP when apparently it reasoned that because the DRP Administrator did not timely submit the Joint Submission to the American Arbitration Association ("AAA"), plaintiff was excused from proceeding to arbitration. Third, in a related argument, GE asserts that the State Court erred because whether GE complied with the procedural aspects of the DRP, such as time frames contained therein, is an issue for an arbitrator, not a court.

Plaintiff counters that reconsideration is *not* appropriate because in the first place the Rooker–Feldman doctrine precludes federal courts from reviewing state court orders. What is more, because GE did not comply with the State time frame for filing a motion to reconsider, plaintiff argues that GE has waived the same. Second, according to plaintiff, GE has not shown the requisite "extraordinary circumstances" necessary to justify reconsideration under Rule 60(b)(6). *See* Pl. Memo. at 8 (citation omitted). As part of that argument plaintiff maintains that GE's contention that the state court misapplied the law is a subject for appeal and not a motion for reconsideration. Finally, plaintiff argues that GE cannot satisfy the rigorous "clearly erroneous" standard which is a prerequisite for Rule 60(b)(6) relief.

In its reply GE counters that because this is a removed action, the Rooker–Feldman doctrine does not apply. What is more, GE maintains that its reconsideration motion is timely under the Federal Rules of Civil Procedure. Furthermore, if the court grants GE's motion for reconsid-

eration and reinstates GE's second through sixth affirmative defenses in action I, then GE wants the court to stay this action and require plaintiff to submit her claims in that action to GE's DRP.

### 1. Rooker–Feldman Doctrine

■ "First announced in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and later affirmed in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Rooker–Feldman doctrine holds that, among federal courts, only the Supreme Court has subject matter jurisdiction to review state court judgments." *Nasso v. Seagal,* 263 F.Supp.2d 596, 608 n. 19 (E.D.N.Y.2003) (internal quotation marks and citation omitted). In *Nasso* the district court held that it had the authority to review a state court's denial of a motion to dismiss despite the Rooker–Feldman doctrine. In so holding Judge Sifton reasoned:

> Upon removal, the orders entered by the state court are treated as though they had been entered by the federal court.... Because the 'Rooker–Feldman doctrine does not work to defeat a district court's authority over the management of its own case,' even where the exercise of such management 'has the secondary effect of voiding a state court determination,' the *doctrine does not preclude* this *Court* from *reviewing orders* that were *entered prior to removal.*

*Id.* at 608 (emphasis added) (citation omitted) (quoting *In re Diet Drugs,* 282 F.3d 220, 241–42 (3d Cir.2002)). The *Nasso* court further explained that "[i]n any event, the [Rooker–Feldman] doctrine does not apply to any review that is authorized by Congress." *Id.* (citing *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir. 2002)). Citing to 28 U.S.C. § 1450, the court accurately stated that "upon removal, a federal court may dissolve or modify

any order entered by the state court." *Id.* at 607. Thus, the *Nasso* court held that because section 1450 section "authorizes [a federal] [c]ourt to reconsider [a] [state court's] [o]rder, the Rooker–Feldman doctrine does *not* preclude such reconsideration." *Id.* at 608 (emphasis added) (footnote omitted).

The reasoning of the *Nasso* court applies with equal force here. The Rooker–Feldman doctrine does not enter into this the court's analysis in this removal case because pursuant to section 1450 it has the authority to review a state court order such as the one at issue. Section 1450 provides in relevant part that "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. Second, there are limits on the applicability of the Rooker–Feldman doctrine. It applies when a federal court is "address[ing][a] *final state court judgment* defined as 'rendered by the highest court of a state in which a decision could be had.'" *Bayside Developers,* 43 F.3d at 1237 n. 5 (emphasis added) (quoting 28 U.S.C. § 1257(a)) (other citation omitted). The challenged order in the present case is not final in that prior to removal it was on appeal to the Third Department, plainly *not* the highest court in New York State. Accordingly, plaintiff's reliance upon the Rooker–Feldman doctrine as a bar to review of the State Court Order is misplaced.

The court is compelled to comment that the only case upon which plaintiff is relying to support her Rooker–Feldman argument is an unpublished decision of the Second Circuit. Because *Gyadu v. Unemployment Compensation,* 173 F.3d 844, 1999 WL 132179 (2d Cir.1999) is a summary order, the Rules of the Second Circuit expressly prohibit a party from

"cit[ing] same ... or otherwise us[ing] [such a case] in unrelated cases before this *or any other court.*" U.S.Ct. of App. 2nd Cir. § 0.23 (emphasis added). Therefore, even assuming that *Gyadu* otherwise is applicable, plaintiff improperly relies upon same to support her position.

### 2. Waiver

■ Plaintiff fares no better with her waiver argument. Plaintiff contends that GE waived its right to move for reconsideration because it did not timely do so under Rule 2221 of the New York Civil Practice Law and Rules, requiring that such a motion be made within 30 days "after service of a copy of the order determining the prior motion and written notice of its entry." N.Y. C.P.L.R. 2221(d)(3) (McKinney Supp.2003). There is a fundamental flaw in this argument: once a case is removed to federal court, federal not state rules of procedure govern. *See Nasso,* 263 F.Supp.2d at 608 (and cases cited therein) (plaintiff's "reliance upon state procedural rules for refusing to review the [state court's] [o]rder ... misplaced because federal procedural rules govern an action after removal[ ]"). Therefore, so long as GE's motion was timely made under federal law (and it was), its timeliness under state law is irrelevant.

### 3. Rule 60(b)(6)

#### a. "Extraordinary Circumstances"

■ As the basis for its reconsideration motion GE is relying upon Rule 60(b)(6). This catch-all provision allows, among other things, relief from an "order, ... for ... any other reason justifying relief from the operation of a judgment." Fed. R.Civ.P. 60(b)(6). Earlier this year, in *Oneida Indian Nation v. County of Oneida,* 214 F.R.D. 83 (N.D.N.Y.2003), this court recognized that "[p]erhaps because of the breadth of [that] Rule ..., [its] applicability ... is fairly circumscribed[.]" *Id.*

at 90. A Rule 60(b)(6) motion "should be used *only in extraordinary circumstances.*" *Id.* (emphasis added) (internal quotation marks and citations omitted). As the Second Circuit so picturesquely stated in *Rinieri v. News Syndicate Co.,* 385 F.2d 818 (2d Cir.1967), "Rule 60(b)(6) is not a *carte blanche* to cast adrift from fixed moorings and time limitations guided only by necessarily variant consciences of different judges ... and may be relied upon only in exceptional circumstances." *Id.* at 20. Keeping those guidelines in mind, the court will address GE's motion to reconsider the State Court's order striking certain of GE's affirmative defenses.

■ Plaintiff's position is that "there is no basis" for reconsidering the State Court's Order under Rule 60(b)(6) because GE has not shown the requisite extraordinary circumstances. *See* Pl. Memo. at 7. In that regard plaintiff asserts that misapplication of the law does not, as GE implies, rise to the level of extraordinary circumstances. Rather, according to plaintiff, misapplication of the law simply "is a matter to be addressed by appeal[.]" *Id.* at 8. Furthermore, according to plaintiff, GE's reliance upon Rule 60(b)(6) also is misplaced because GE has not satisfied the rigorous clearly erroneous standard which governs motions under that Rule.

GE does not explicitly argue the existence of extraordinary or exceptional circumstances. Nor does it explain how the State Court's order was clearly erroneous. Apparently GE's assertion that the State Court committed "clear errors of law and fact[ ]" is premised upon the assumption that those alleged errors are tantamount to a showing of exceptional circumstances, as well as being clearly erroneous. *See* Def. Memo. at 16. From GE's point of view, those alleged errors occurred when the State Court disregarded plaintiff's failure to submit her State law claims to the

DRP. GE therefore contends that plaintiff's failure to begin, let alone exhaust, the DRP as to her state law claims is a bar to the commencement of action I. Accordingly, GE is requesting that this court reconsider that aspect of the State Court's order striking some of GE's affirmative defenses because that order effectively disregarded this argument by GE.

After careful consideration, the court finds that GE has shown the requisite exceptional circumstances and that the State Court's order as it relates to GE's defenses was clearly erroneous. To be sure, the cases upon which GE is relying to support a finding of exceptional circumstances are distinguishable from the present case. For example, the Second Circuit held in *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255 (2d Cir.1995), that the district court properly reconsidered its earlier ruling against an employer where the employer "introduc[ed] . . . additional *relevant* case law and substantial legislative history[.]" *Id.* at 257 (emphasis added). *Shrader* does not advance GE's exceptional circumstances argument though because GE has not provided any such case law or legislative history. Likewise, *Salamon v. Our Lady of Victory Hospital*, 99–CV–0048E, 2002 WL 436766 (W.D.N.Y. Feb. 12, 2002), is distinguishable in that the basis for reconsideration there was "partly a result of th[e] Court's having overlooked [plaintiff's] earlier request for assistance in compelling discovery[.]" *Id.* at *2. GE is making no such claim here and indeed that would be an impossibility.

Nevertheless, the court finds that exceptional circumstances do exist here. They arise from the State Court's implicit finding that plaintiff had complied with the procedural aspects of the DRP and conversely that GE had not. Following that line of reasoning, the State Court also impliedly found that plaintiff had properly commenced her lawsuit. On that basis the State Court granted plaintiff's motion to strike GE's affirmative . defenses which contradicted that conclusion.

■ The flaw in this reasoning is that it ignores the well developed law pertaining to arbitration under the FAA. "The FAA creates a 'body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of th[at][Act].'" *Mehler v. Terminix Intern. Co. L.P.*, 205 F.3d 44, 47 (2d Cir.2000) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Here, it is undisputed that the FAA governs GE's DRP. Indeed, it would be impossible to argue otherwise given the unequivocal language of the DRP reciting, *inter alia*, "[t]his procedure is a written agreement for the resolution of employment disputes, pursuant to the [FAA.]" Def. exh. A at 172. Plaintiff herself concedes "that the DRP is an enforceable agreement to arbitrate under the [FAA.]" Krackeler Aff., at 13, ¶ 9.

■ In any event, under that body of substantive law, "[t]here is a strong . . . policy favoring arbitration as an alternative means of dispute resolution." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (internal quotation marks and citation omitted). Of equal if not more import here is that the Supreme Court has long recognized "'procedural' questions which grow out of [a] dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 592, 154 L.Ed.2d 491 (2002) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)) (emphasis added by *Howsam* Court). Thus, for example in *Wiley* the Supreme Court held that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these

steps are prerequisites to arbitration." *Wiley*, 376 U.S. at 557, 84 S.Ct. 909. Such is the case here: the parties sharply disagree as to whether the prerequisites to arbitration under the DRP were met. Yet, the State court disregarded this well-settled body of law.

Compounding its failure to consider this law is the State Court's failure to take into account the exact nature of the affirmative defenses which it struck. Each of those defenses is directed at the issue of procedural arbitrability. In its fourth affirmative defense GE explicitly alleges as much,[3] but the remaining defenses can be read as asserting issues relating to procedural arbitrability as well. Further, the State Court grounded its decision to strike on GE's purported failure to comply with its DRP obligations. In so doing, the State Supreme Court here invaded the province of the arbitrator. As the Supreme Court recently reiterated, "[a]rbitrators are well situated to answer ... question[s]" of "contract interpretation and arbitration procedures." *Green Tree Financial Corp. v. Bazzle*, — U.S. —, —, 123 S.Ct. 2402, 2407, 156 L.Ed.2d 414 (2003). Those are precisely the type of issues with which the State Court was presented by the parties' motions there, and which are before the court on these motions.

To illustrate, in terms of plaintiff's obligation to pursue her complaint through level IV of the DRP, the parties differently interpret the DRP in this regard. Plaintiff contends that she clearly exhausted all levels of the DRP because, in effect, she was excused from completing level IV arbitration. Plaintiff posits that she was under no obligation to complete level IV because "pursuant to the plain language of [the] DRP[,]" GE did not timely file the joint arbitration form with the AAA. *See*

Pl. Memo. at 12 (citation omitted). On the other hand, as GE reads the DRP, the joint arbitration form is not a "Company response" within the meaning of that agreement. Rather, by its terms as well as the plain language of the DRP, that form is "joint," thus squarely placing the burden to timely file same on *both* parties. *See* Def. Memo. at 18–20. Moreover, as GE correctly notes, "the deadline provision only permits the employee to submit her claim 'at the next level,' if the Company fails to respond. The DRP only has four 'levels' and an action in court is not one of them." *Id.* at 20. Given those differing interpretations of the terms of the DRP, as the Supreme court made clear in *Green Tree Financial, supra,* resolution of such ambiguity is an issue for arbitration, not for the courts.

What is more, as should be obvious by now, the parties vigorously dispute the arbitration procedures, including plaintiff's direct challenge to the validity of the arbitration procedure itself. *See* Def.App., exh. A at 29–33, ¶¶ 52–72. As previously noted, the parties also have contrasting views as to whether or not plaintiff complied with the DRP. Those issues of procedural arbitrability are also "well situated" for arbitration. *See id.,* — U.S. at —, 123 S.Ct. at 2407; *see also Howsam,* 123 S.Ct. at 591. Based upon the foregoing, the court finds that GE has met its burden of demonstrating that the State Court's order was clearly erroneous and for that same reason, GE also has shown exceptional circumstances. Therefore, the court grants GE's motion for reconsideration and hereby reinstates GE's second through sixth affirmative defenses as alleged in action I.

---

**3.** "The complaint's sixth cause of action alleges question of procedural arbitrability that are for an arbitrator to decide in the first instance." Def.App., exh. A at 78, ¶ 78.

## C. Family Medical Leave Act

### 1. Governing Legal Standard

■■ GE seeks dismissal, supposedly under Fed.R.Civ.P. 60(b)(6), of plaintiff's FMLA claim. As the plain language of that Rule makes clear though, it governs motions for reconsideration—*not* dismissal. GE does not specify any other procedural vehicle for this aspect of its motion. However, because GE filed its answer prior to the filing of this motion the court will assume that Rule 12(c), a motion for judgment on the pleadings, is the basis for this aspect of GE's motion. Thus, in examining the merits of plaintiffs' FMLA claim the court will, as it must, grant GE's motion in this regard *"only* if it appears beyond doubt that the *plaintiff can prove no set of facts* in support of h[er] claim which would entitle h[er] to relief." *See Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) (emphasis added) (internal quotation marks and citation omitted).

### 2. Judgment on the Pleadings

■■ GE contends that the court should dismiss plaintiff's FMLA claim because she did not submit that claim to the DRP. Among those claims which are deemed "covered" under the DRP, are "[c]laims relating to . . ., leaves of absence[.]" *See* Def.App., exh. A at 176, § 2.2(M)(1). Claims of "[e]mployment discrimination and harassment, based on . . . [*any* ] *other characteristic protected by law* [ ]" are also covered for purposes of GE's DRP. *See id.* at 176, § 2.2(M)(3) (emphasis added). Based upon the foregoing, GE maintains that plaintiff's FMLA claim is a "covered claim" within the meaning of the DRP. Further, GE reasons that because the DRP obligated plaintiff to complete that process prior to commencing a court action, and because she did not initiate that process with respect to her FMLA claim, she is barred from pursuing that claim now.

Plaintiff retorts that GE's position is "disingenuous and absurd" given the record. *See* Krackeler Aff. at 9, ¶ 6. Plaintiff points out that her FMLA claim is mentioned in her August 7, 2002 amended affidavit and complaint which were submitted as part of the mediation. More specifically, in that complaint plaintiff averred that her supervisor "criticized [her] extensively for taking a medical leave when male individuals of the same level have taken extended medical leave without any criticism at all." Def.App., exh. A at 95. She went on to aver that that "medical leave . . . was taken [as] a direct and proximate result of [her supervisor's] misconduct[.]" *Id.*

Plaintiff further notes that in a pre-mediation submission, she advised the AAA that her supervisor "and others engaged in a campaign against her in direct retaliation for her complaint of gender discrimination and later for her taking *family medical leave* pursuant to the FMLA." *Id.* at 103 (emphasis added); *see also id.* at 25. In light of the foregoing, plaintiff contends that GE was on notice of her FMLA claim and such claim was part of the DRP process. Hence, the court should deny GE's motion to dismiss this FMLA cause of action.

Framing the issue, as did the parties, in terms of whether or not plaintiff's FMLA claim was submitted to DRP, GE has not met its burden of showing that it is entitled to relief under Rule 12(c) as to that particular cause of action. The FMLA claim is a "covered claim" for DRP purposes, and the parties do not contend otherwise. As a covered claim, unless completion of the DRP is excused based upon the language of same, completion is a precondition to the commencement of a lawsuit. The court will not dismiss plaintiff's FMLA claim for allegedly failing to complete the DRP, however, because the pres-

ent record is unclear as to whether plaintiff satisfied that precondition. There is evidence, albeit scant, that this FMLA claim was part of plaintiff's DRP. Consequently, because it does not "appear[ ] beyond doubt that the plaintiff can prove no set of facts in support of h[er] [FMLA] claim which would entitle h[er] to relief[,]" the court denies GE's motion to the extent it is seeking judgment on the pleadings as to that particular claim. *See Deravin,* 335 F.3d at 200.

Next the court will turn to GE's alternative request seeking to stay this action and compel submission of the FMLA claim to GE's DRP. Before doing so, however, the court notes that it is fully aware that GE is not specifically seeking to compel arbitration, as it is with respect to plaintiff's Title VII and HRL claims. Rather, GE is seeking to have plaintiff start anew with her FMLA claim, from Level I in the DRP process. As will be seen though, because the court finds that plaintiff's Title VII and HRL claims should be sent to arbitration, it stands to reason that her FMLA claim should be sent to arbitration as well. It will then be for the arbitrator to decide whether this particular claim should be in arbitration or not.

### 3. *Stay/ Compel Arbitration*

 In light of the case law generally favoring arbitration previously discussed in connection with GE's reconsideration motion, at this point the issue is whether GE is entitled to a stay of plaintiff's FMLA cause of action under the FAA. Section three of the FAA "provides for stays of federal proceedings pending arbitration under appropriate circumstances." *Mehler,* 205 F.3d at 47 (citation omitted). In deciding whether to stay court proceedings pending arbitration, a court "need determine only: (1) whether there was an agreement to arbitrate: and (2) whether the dispute falls within the scope of the arbitration agreement." *Re-*

*gency Capital, LLC v. Corpfinance International, Inc.,* 02 Civ. 5615, 2003 WL 22400200, at *4 (S.D.N.Y. Oct. 20, 2003) (citing *Mehler,* 205 F.3d at 47). Both of those criteria are easily met here, as set forth previously. Accordingly, the court grants GE's motion to stay this action as it pertains to the FMLA.

 Further, the court directs that this FMLA claim be included among those claims to be submitted to the arbitrator. The arbitrator can then decide in the first instance whether such claim has properly been presented for arbitration under the DRP. This result is consistent with the "federal policy strongly favor[ing] arbitration as an alternative dispute resolution process[,]" as well as the well-established principle that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Collins & Aikman Products Co. v. Bldg. Systems,* 58 F.3d 16, 19 (2d Cir.1995) (internal quotation marks and citation omitted). What is more, requiring the arbitrator to decide whether plaintiff complied, or indeed had any obligation to comply with, the four levels of the DRP is in keeping with the dictates of the Supreme Court set forth earlier that generally arbitrators, rather than courts, are to decide questions of procedural arbitrability. *See United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 569, 80 S.Ct. 1343, 1347, 4 L.Ed.2d 1403 (1960) ("When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal."); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964) ("Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'proce-

dural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); *Schweizer Aircraft Corp. v. Local 1752*, 29 F.3d 83, 88 (2d Cir.1994) ("The question of whether the time requirements of the CBA were met, as well as the substantive interpretation of the ·CBA, must be determined by the arbitrator."); and *Stotter Div. of Graduate Plastics Co., Inc. v. District 65, United Auto Workers, AFL–CIO*, 991 F.2d 997, 1001 (2d Cir.1993) ("Judgment upon ... procedural aspects of ... arbitration ... is a matter for the arbitrator, not this (or any other) court."). Then, if the arbitrator decides that plaintiff has not complied with the prerequisites for level IV arbitration, the arbitrator may take whatever action is deemed appropriate with respect to this FMLA claim.

### D. Title VII and HRL

As to the Title VII and HRL claims, in its Notice of Motion GE is seeking an order staying those claims and requiring their submission to arbitration, level IV of the DRP. *See* Def. Notice at 2, ¶ 2. GE is seeking broader relief in its supporting memorandum, however. It seeks dismissal of the Title VI and HRL claims, not just a stay.[4] *See* Def. Opp'n Memo. at 22. GE reiterates its argument that dismissal is proper because plaintiff did not complete all four levels of the DRP. In contrast to her FMLA claim, GE readily admits that plaintiff did complete the first three levels of the DRP. By the same token, however, GE is taking the position that because she was contractually obligated to complete level IV—arbitration—and she did not do that, the court should dismiss plaintiff's Title VII and HRL claims. *See id.*

### 1. Judgment on the Pleadings

Relying upon the doctrine of collateral estoppel, plaintiff responds that the court should deny GE's motion for judgment on the pleadings as to her Title VII and HRL claims. Similarly, also invoking the doctrine of collateral estoppel, plaintiff contends that this court should give preclusive effect to the State Court's order, and deny GE's motion for a stay and an order compelling arbitration of her Title VII and HRL claims.

Under New York law, which applies here, "collateral estoppel may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate." *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir.2003) (internal quotation marks and citations omitted). Both of these elements are lacking here. First of all, there is no identity of issues. It is readily apparent that neither plaintiff's Title VII nor her HRL claims were before the State Court in action I. On the face of that complaint, plaintiff's causes of action are all based upon state common law. In particular, plaintiff alleges the following in action I:(1) breach of contract; (2) bad faith; (3) fraudulent misconduct; (4) negligence; (5) what appears to be a claim for intentional infliction of emotional distress; and (6) seeking a declaratory judgment that GE's arbitration process, as provided for in the DRP, is null and void. Obviously those discrimination claims, and more particularly whether plaintiff had completed all four levels of the DRP with respect thereto, were *not* before the State Court. Thus, GE did not have a full and fair opportunity to litigate same.

---

**4.** Again the court is assuming that GE is relying upon Rule 12(c) as the procedural mechanism here.

There are two additional reasons why GE cannot be said to have had a full and fair opportunity to litigate the issue just stated. First, the issue of whether plaintiff is precluded from bringing her Title VII and HRL claims due to her alleged failure to complete the DRP process was not litigated through the New York State court system. *See Johnson v. Watkins,* 101 F.3d 792, 795 (2d Cir.1996) (citations omitted) ("[C]ollateral estoppel will not bar reconsideration of an issue if there is an inability to obtain review or there has been no review, even though an appeal was taken.") After GE filed its Notice of Appeal, action I took a procedural twist. Prior to the State Court's Order and the filing of that Notice, per the parties' agreement, action I was consolidated with action II. Thus, GE's appeal was never heard.

Second, the State Court order is void of any specific findings or law to support its result. Therefore, arguably it can have no preclusive effect here. *Cf. Miele v. Pension Plan of New York State Teamsters Conference Pension & Retirement Fund,* 72 F.Supp.2d 88, 96–97 (E.D.N.Y.1999) (citations omitted). For these reasons, the court rejects plaintiff's argument that the court should give preclusive effect to the State Court's Order and deny GE's motion for judgment on the pleadings on that basis.

 By the same token, however, the court denies GE's motion for judgment on the pleadings as to plaintiff's Title VII and HRL claims. As with plaintiff's FMLA claim, it does not "appear[ ] beyond doubt that the plaintiff can prove no ·set of facts in support of h[er] claim which would entitle h[er] to relief." *See Deravin,* 335 F.3d at 200. This is especially so given the issue, as already discussed, regarding the impact, if any, of the joint arbitration form upon the parties' obligations under the DRP. Also as with the FMLA claim, the issues of procedural arbitrability which surround the Title VII and HLR claims should be decided in the first instance by the arbitrator. To summarize, the court denies GE's motion to dismiss the Title VII and HRL claims due to plaintiff's alleged failure to complete the DRP, but it grants GE's motion for alternative relief, and stays the present action as to those two claims. The court further grants GE's motion to the extent it is seeking an order compelling plaintiff to submit those claims to arbitration in accordance with the DRP.

## II. Plaintiff's Cross–Motion

For clarification, the court notes that in her Notice of Motion plaintiff Breedlove cites to Fed.R.Civ.P. 12(f) as the basis for her cross-motion. Among other things, that Rule governs "[m]otion[s] to [s]trike"..."any insufficient defense[.]" Fed.R.Civ.P. 12(f). Nowhere else in her papers does plaintiff refer to this Rule or to "striking" any defense, however. Instead she argues for "dismissal," a term which is used ordinarily when referring to motions to dismiss for failure to state a claim upon which relief can be granted made pursuant to Fed.R.Civ.P. 12(b)(6).

In any event, despite the difference in nomenclature, as this court recently observed, the standards for a Rule 12(f) motion to strike and a Rule 12(b)(6) motion to dismiss are "mirror image[s.]" *Canadian St. Regis Band of Mohawk Indians v. New York,* 278 F.Supp.2d 313, 332 (N.D.N.Y. 2003) (internal quotation marks and citations omitted). The court will briefly review these standards before addressing plaintiff's cross-motion.

 First of all, it should be noted that "[t]ypically courts do not look favorably upon motions to strike." *Id.* at 324 (citation and footnoted omitted). "That does not mean that such motions are never granted, however. Motions to strike are to be granted [, but] only when it appears

to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Id.* (internal quotation marks, emphasis and citations omitted). "In other words, courts should grant these motions when the defenses presented are clearly insufficient." *Id.* at 324–25 (citation and emphasis omitted). Second, "before striking an affirmative defense there must be a showing that its inclusion . . . [will] result in prejudice to the plaintiff." *Id.* at 325 (internal quotation marks and citations omitted). It is against these standards which the court will consider plaintiff's motion to strike GE's second and third affirmative defenses in action II.

### A. Administrative Prerequisites

In action II, as its second affirmative defense, GE alleges that plaintiff's claims are "barred by her failure to comply with administrative prerequisites." *See* Krackeler Aff., exh. A thereto at 3, ¶ 17. Plaintiff is seeking to strike this failure to exhaust defense as to her Title VII and HRL claims because she believes that she did comply with the administrative prerequisites for such claims. She did that by filing the necessary documentation with the EEOC, culminating in a right to sue letter from the EEOC and a dismissal for administrative convenience from the State Division.

Plaintiff also is seeking to strike this affirmative defense in connection with her FMLA claim. Plaintiff reasons that in contrast to Title VII, there are no administrative exhaustion requirements as a prerequisite to the commencement of an FMLA claim in federal court. GE is not contending otherwise. Because GE is not opposing plaintiff's motion to strike its second affirmative defense in action II as that defense relates to plaintiff's FMLA claim, the court hereby grants this aspect of plaintiff's cross-motion.

The viability of GE's second affirmative defense as it pertains to plaintiff's Title VII and HRL claims cannot be resolved so readily, however. GE contends that dismissal of its second affirmative defense would be "premature" because GE has "had no discovery with respect to Plaintiff's Title VII and HRL claims and [they] are entitled to discovery to determine (1) whether Plaintiff has included any post-charge claims in her complaint and (2) if so, whether those claims are 'reasonably related' to those charges she filed with the EEOC and the [State Division]." Def. Oppn. Memo. at 12 (citation omitted).

It is well-established that "[a]s a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin,* 335 F.3d at 200 (citing, *inter alia, Fitzgerald v. Henderson,* 251 F.3d 345, 358–59 (2d Cir.2001)). An equally well-settled corollary to that rule is "that claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Id.* at 200 (internal quotation marks and citation omitted).

In the present case, the EEOC right to sue letter is part of this record. *See* Def.App., exh. A at 249. It is not clear, however, what document or documents comprised the EEOC charge itself. Nor is it clear to what extent, if any, GE had access to same. Thus, if GE does not have access to same, the court hereby directs plaintiff to provide to GE with a copy of the EEOC charge within 60 days of the date hereof. After reviewing that charge GE may take whatever action it deems appropriate. GE should keep in mind though that to the extent plaintiff may have included post-charge claims in her complaint, whether the same are "reasonably related" is an inquiry for this

court—not for the parties. *See id.; see also Sharabura v. Taylor*, 03 CV 1866, 2003 WL 22170601, at *2 (E.D.N.Y. Sept. 16, 2003) (internal quotation marks and citation omitted) ("[A] district court can entertain Title VII claims only if they were either presented in a timely EEOC charge or are based on conduct that it is 'reasonably related' to the conduct alleged in the EEOC charge.'"). Accordingly, the court hereby denies plaintiff's cross-motion to dismiss GE's second affirmative defense in action II as it pertains to plaintiff's Title VII and HRL claims. It is simply impossible to discern from the present record whether GE's failure to exhaust administrative remedies is a "clearly insufficient defense" at least in terms of those two claims. Furthermore, there has been no suggestion from plaintiff that she will be prejudiced in any way if this defense is allowed to stand, at least for now.

Plaintiff is also seeking to dismiss the second affirmative defense as it pertains to her FMLA cause of action. She reasons that in contrast to her Title VII and HRL claims, the United States Department of Labor ("DOL"), the agency charged with enforcing the FMLA, does not have a requirement that plaintiff notify DOL before filing a suit under that Act. *See* 29 U.S.C. § 2617(a)(2). Furthermore, GE is not challenging this aspect of plaintiff's motion. Therefore, the court hereby grants plaintiff's cross-motion to dismiss GE's second affirmative defense, but only insofar as it relates to the FMLA cause of action.

### B. Compliance with Dispute Resolution Program

■ In its action II answer, GE asserts the following:

All of the claims raised in the Complaint are covered claims under [GE's] [DRP]. Plaintiff has never sought to resolve some or all of the claims raised in the Complaint through the DRP, and has failed to exhaust the levels of the DRP with respect to her claims. Plaintiff's claims are, therefore, barred for failure to raise her claims under the DRP and to exhaust all levels of the DPR before commencing an action in Court.

Krackeler Aff., exh A thereto at 3–4, ¶ 18. Relying upon the State Court's Order, wherein it struck a defense in action I nearly identical to this, plaintiff is seeking dismissal of this third affirmative defense in action II. Again plaintiff is relying upon the doctrine of collateral as the basis for this part of her motion. To support her collateral estoppel argument, plaintiff relies upon the following: (1) the identity of parties between action I and action II; and supposedly (2) "all of plaintiff's causes of actions and claim are based upon the same facts and circumstances," and (3) "all parties had a full and fair opportunity to be heard … in State … Court[.]" Pl. Memo. at 3. In light of the foregoing, plaintiff declares that this court should strike GE's third affirmative defense in action II on the theory that in action I the State Court struck a nearly identical defense. It is not that simple, however.

Collateral estoppel does not require striking this particular affirmative defense, GE responds. GE argues that collateral estoppel has no applicability where, as here, the actions were consolidated, merging into one action. There is no need to consider the interplay, if any, between collateral estoppel and consolidation. That is so because the court finds that collateral estoppel does not apply here given that GE did not have a full and fair opportunity to litigate the issue of whether plaintiff failed to comply with the DRP as to her state law claims. As previously explained in the context of GE's motion to dismiss plaintiff's Title VII and HRL claims, that issue was not litigated through the New York State appeal process. *See Johnson*,

101 F.3d at 795 (citations omitted) ("[C]ollateral estoppel will not bar reconsideration of an issue if there is an inability to obtain review or there has been no review, even though an appeal was taken.") Here, GE did appeal the State Court's order, but the Third Department never heard that appeal. Thus, GE cannot be said to have had a full and fair opportunity to litigate the issue just identified.

Further, as the burden seeking the benefit of collateral estoppel, plaintiff has not met her burden of proving an identity of issues. *See Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 730 (2d Cir.2001) (citation omitted) (burden of proving identity of issues rests on proponent of collateral estoppel). This identity of issue element is lacking because in action I the pertinent issue before the State Court was the applicability of the affirmative defense of failure to exhaust the DRP *vis-a-vis* plaintiff's state law claims, whereas here that exhaustion issue arises in the context of Title VII and HRL claims. Thus, the court denies plaintiff's cross-motion to dismiss the third affirmative defense in action II.

### C. Discovery

■ The third part of plaintiff's cross-motion seeks an order compelling GE, in accordance with State Court's Order to compel[ ] [GE] to provide her with discovery she has sought repeatedly during [GE's] DRP, the same discovery which was ordered [in the State Court's] ... May 3, 2003 Order. Krackeler Aff., at 6, ¶ 4. There is no need to recite the background of this discovery dispute. It is amply detailed in the affidavit of plaintiff's attorney, *see id.* at 6, and GE's opposition memorandum at 8–11. Plaintiff is taking the position that the State Court Order is the "law of the case" insofar as GE's obligation to provide discovery to her is concerned, *i.e.* because the State Court ordered production of certain documents, the law of the

case doctrine mandates that this court reach the same conclusion.

The court need not delve into a detailed discussion of the law of the case doctrine to resolve this discovery dispute because GE recognizes that if the court, as it has, "orders plaintiff to submit and arbitrate her claims under the DRP, ..., discovery may proceed under the provisions of the DRP." *See* Def. Opp'n Memo. at 9. Moreover, GE concedes that in that event, it *"will* produce discovery under the DRP[.]" *Id.* (emphasis added). Given that concession, as well as the fact that "the doctrine of the law of the case is discretionary and does not limit a court's power to reconsider its decisions[,]" *Aramony v. United Way of America*, 254 F.3d 403, 411 (2d Cir.2001) (citation omitted), even in removed cases such as the present one, *Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40–41 (2d Cir.1980), the law of the case does *not* require this court to adhere to the discovery aspect of the State Court's Order. The court therefore denies plaintiff's motion insofar as it is seeking a discovery order based upon the May 3, 2002 State Court Order. The parties may raise any discovery issues for the arbitrator's determination, however.

### D. Jury Trial

■ The last part of plaintiff's cross-motion is a "request that the Court accept the filing of plaintiff's demand for a jury trial." *See* Krackeler Aff., at 8, ¶ 5 (citing exh. F thereto). Plaintiff did not file a demand for a jury trial in State Court because the case had not progressed to the point where she was able to do that. Section 4102 of New York's Civil Practice Law and Rules provides that where a party is served with a note of issue which does not contain a jury demand, that party may file a jury demand within fifteen days after service of that note of issue. N.Y. C.P.L.R. § 4102(a). That Rule is clear that "[a] demand [for a jury] *shall not* be

accepted for filing unless a note of issue is filed in the action." *Id.* (emphasis added). And, a note of issue may not be filed until discovery is complete. Obviously then because this court action is in the preliminary stages (as it was in state court), discovery was not complete prior to removal (nor is it now) and hence a note of issue was not filed. Consequently, the demand for a jury trial provisions of section 4102(a) were not triggered.

The court is fully cognizant of the case law analyzing the interplay between Fed.R.Civ.P. 81(c), governing, among other things, jury demands in removed case and state law, such as N.Y. C.P.L.R. § 4102(a), also governing jury demands. *See, e.g., Corinthian Media, Inc. v. Putnam,* 845 F.Supp. 143 (S.D.N.Y. 1994). There is no need to engage in an lengthy analysis of that issue in this removed action, however, because the court has broad discretion under section 4102 to grant jury requests, even an untimely one (which is arguably the case here). *See Turkenitz v. Metromotion, Inc.,* No. 97Civ.2513, 1997 WL 773713, at *5 (S.D.N.Y. Dec. 12, 1997). Significantly where, as here, the defendant has not claimed let alone shown any prejudice by the granting of such a request, courts will exercise their discretion to allow jury trials. *See id.* (granting belated request, *i.e.,* eve of trial, for a jury in removed case where defendants did not identify any prejudice); *see also Reliance Elec. Co. v. Exxon Capital Corp.,* 932 F.Supp. 101 (S.D.N.Y.1996). Thus, under the circumstances of this particular case, combined with GE's failure to object, the court in its discretion hereby grants plaintiff's cross-motion "request[ing] that this Court in its discretion order [GE] to accept service of this demand and the Court Clerk to accept the filing [of same]." Krackeler Aff., at 9, ¶ 5.

## Conclusion

To summarize, the court hereby:

(1) GRANTS defendant The General Electric Company's ("GE") motion for reconsideration of the May 8, 2003 Order of New York State Supreme Court Justice Frank B. Williams and reinstates defendant GE's second through sixth affirmative defenses in action I;

(2) DENIES defendant GE's motion for judgment on the pleadings as to the Family Medical Leave Act, Title VII and HRL causes of action;

(3) DENIES plaintiff Jill Breedlove's cross-motion to dismiss defendant GE's second affirmative defense (failure to satisfy administrative prequisites) in action II with respect to her Title VII and HRL causes of action, but GRANTS her cross-motion to dismiss that defense insofar as defendant GE is asserting the same as to plaintiff's FMLA cause of action;

(4) DENIES plaintiff's cross-motion to dismiss defendant GE's third affirmative defense (failure to comply with GE's Dispute Resolution Program) in action II;

(5) DENIES plaintiff's cross-motion to compel discovery based upon the May 5, 2003 order; questions of discovery, if any, shall be considered by the arbitrator;

(6) GRANTS plaintiff's cross-motion and orders defendant GE to accept service of plaintiff's jury demand and the Clerk of the Court to accept same for filing; and

(7) GRANTS defendant GE's motion to stay this consolidated action in its entirety.[5]

IT IS SO ORDERED.

---

**5.** Given the court's decision to stay this action as to plaintiff's Title VII, HRL and FMLA

claim, and because there are also issues of procedural arbitrability as to plaintiff's state law causes of action, the court is ordering a

stay with respect to all causes of action in this consolidated action, pending the outcome of the arbitrator.